FILED

2026 FEB -9 PM 1:54

CLERK. US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

§
§
JENNIFER FERRELL BRANTLEY    §
§
    Plaintiff,    §
§
v.    §
§
THE UNIVERSITY OF TEXAS AT    §    Civil Action No. 1:26CV00311
§
AUSTIN, *and* PRESIDENT JAMES E.    §
§
DAVIS, *in his official capacity as President of*    §
§
*the University of Texas at Austin*,    §
§
    *Defendants.*    §
§

**VERFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE:

Plaintiff, Jennifer Ferrell Brantley, proceeding by and through her own representation,

pro se, files this Verified Complaint for Declaratory and Injunctive Relief against the University

of Texas at Austin ("UT" or "UT Austin") and President James E. Davis ("Davis"), in his official

capacity as President of the University of Texas at Austin. UT is continuing to use and propagate

disputed disciplinary findings and enforce/no-contact and speech restrictions that were imposed

through decision-making relied on undisclosed BAT/BRAC communications and pre-notice

emails indicating outcome/track selection before Plaintiff's notice in Student Conduct and

Academic Integrity ("SCAI"), Behavior Assessment Team ("BAT"), and Behavior Risk

1

Assessment Committee ("BRAC") channels, causing ongoing eligibility and access harms that cannot be repaired after the fact.

## I. INTRODUCTION

1. This is an action for declaratory and injunctive relief to remedy ongoing violations of Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12132 and its implementing regulations, including 28 C.F.R. § 35.160, and the First and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983.

2. Plaintiff is a qualified student with disabilities that substantially limit one or more major life activities, and Plaintiff alleges that UT Austin, through its President and other agents, has engaged in disability discrimination, denial of reasonable accommodations and effective communication, deprivation of due process, unequal treatment, and the suppression of protected speech in academic and student disciplinary proceedings, including through an undisclosed behavioral threat-assessment infrastructure.

3. Specifically, Plaintiff challenges UT Austin's policies and practices that: (a) deny reasonable accommodations for Plaintiff's communication and processing disabilities in academic and disciplinary settings; (b) subject Plaintiff to disciplinary processes that are fundamentally unfair, lack due process, and treat her disparately from similarly situated non-disabled students, including through the entanglement of the Student Conduct and Academic Integrity ("SCAI") process with an opaque Behavioral Assessment Team ("BAT") and Behavior Risk Assessment Committee ("BRAC") infrastructure; (c) rely on attributed statements Plaintiff did not make to justify ongoing and escalating restrictions that deny Plaintiff equal educational access; and (d) retaliate against Plaintiff and impose unlawful prior restraints and

other restrictions on Plaintiff's speech for exercising First Amendment rights, including speaking out and publishing about disability discrimination.

4. Plaintiff seeks to enjoin President Davis, in his official capacity, as someone with authority to direct the administration and enforcement of the University's policies, and its officers, agents, employees, and third parties, from perpetuating ongoing violations. Plaintiff requests a narrow, prospective injunction that quarantines the challenged disciplinary findings and sanctions, preventing their use as a predicate for additional restrictions or eligibility consequences, and requiring disability-informed, constitutionally compliant procedures going forward.[1]

5. Plaintiff seeks immediate emergency relief in the form of a Temporary Restraining Order, followed by a Preliminary Injunction and Permanent Injunction, to prevent Defendants from using or giving effect to the challenged disciplinary record and related restrictions pending final resolution.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because this action arises under the laws of the United States, including Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983.

---

[1] "Quarantine" means Defendants may not use, rely on, disseminate, or give effect to the challenged findings/sanctions/probation status (or derivative restrictions) in any eligibility determination or disciplinary escalation pending final judgment.

7. ADA Title II coverage / sovereign immunity. UT Austin is a "public entity" subject to Title II of the ADA. 42 U.S.C. § 12132. Plaintiff seeks prospective injunctive and declaratory relief to stop ongoing violations of federal law, which is available against Defendant Davis in his official capacity under *Ex parte Young*, 209 U.S. 123 (1908). In addition, Congress expressly provided that a State shall not be immune under the Eleventh Amendment for violations of the ADA. 42 U.S.C. § 12202.

8. This Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202.

9. Venue is proper in the Western District of Texas, Austin Division under 28 U.S.C. § 1391(b)(1) and § 1391(b)(2) because Defendants reside in this District for venue purposes and a substantial part of the events or omissions giving rise to the claims occurred in this District, including the challenged disciplinary process and maintenance and use of Plaintiff's disciplinary record and related eligibility determinations in Austin, Texas.

### III. PARTIES

10. Plaintiff, Jennifer Ferrell Brantley, is an undergraduate student at the University of Texas at Austin and a qualified individual with disabilities within the meaning of Title II of the ADA.

11. Defendant UT Austin is a public institution of higher education located in Austin, Texas, and is named as a Defendant for Plaintiff's ADA Title II claims and for the injunctive and declaratory relief requested in this Complaint.

12. Defendant James E. Davis is the President of The University of Texas at Austin and is sued in his official capacity for prospective injunctive relief. Upon information and belief, as UT Austin's chief executive officer, Defendant Davis has authority to direct and supervise

University administrative units, including the Student Conduct and Academic Integrity function ("SCAI") and the behavioral assessment infrastructure known as the Behavior Assessment Team ("BAT") and the Behavior Risk Assessment Committee ("BRAC"), and to ensure compliance by University officers, agents, employees, and third parties with Court-ordered relief.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Disability Status.

13. Plaintiff is a qualified person with multiple disabilities.

14. Plaintiff has physical, psychiatric, neurological, and neurodevelopmental disabilities that are hidden, chronic, and episodic/cyclical. These disabilities substantially limit major life activities, including learning and academic performance; cognition and executive functioning, including processing speed, working memory, concentration, organization, and task switching; communication, including speech fluency/word-finding and comprehension of vague or indirect language; sensory/perceptual functioning; physical stamina and motor functioning; and self-regulation and daily functioning, including stress tolerance and emotional regulation.

15. Plaintiff is registered with UT Austin's Disability and Access ("D&A") office, which maintains records of her neuropsychology and psychological evaluations and issues accommodation letters. Plaintiff's records document her need for accommodations.

16. Plaintiff's neuropsychological evaluation documents that Plaintiff's processing speed and working memory are declined relative to overall intellectual functioning; that she has

5

difficulty identifying important information from distractors; and that switching tasks is difficult without time to transition. The evaluation further explains that Plaintiff needs repetition, reminders, and cues, additional time to switch tasks, and extra time to organize and consolidate information, and that she benefits from decreased environmental distractions, reminders, and organizational help.

17. Consistent with Plaintiff's documented limitations, the evaluation specifically identifies helpful academic/vocational accommodations and strategies including simplified/organized instructions, extended time for tasks, verbal information paired with visual cues, and written notes or email memorializing meetings/communications for later review, as well as working in a quiet/minimal-distraction environment and breaking down/repeating instructions on request. Plaintiff alleges these access needs are directly implicated by UT's disciplinary communications and procedures at issue in this action, particularly where UT used vague, shifting categories and time-compressed demands in a high-stakes process, because Plaintiff's disability-linked limitations predictably impair comprehension, processing, and compliant execution absent clear written directives and adequate time.

## B. Pre-Referral Escalation and Threat-Framing.

18. After Plaintiff experienced exclusion and failed Wolford's second exam, Plaintiff's email volume to Wolford increased beginning November 13, 2024, following grade return.

19. In early January 2025, after Plaintiff referenced an OCR complaint to Wolford, Wolford filed his first Behavior Concerns Advice Line ("BCAL") report days later.

20. In the BCAL report, Wolford referenced Plaintiff's disabilities and acknowledged that he understood her to be requesting accommodations, but stated he was "worried about [Plaintiff's] response," mischaracterizing some of their interactions and framing Plaintiff as a safety concern.

21. On March 31, 2025, Wolford referred Plaintiff to SCAI.

**C. Pre-Notice and Hearing Outcome Signaling.**

22. Before Plaintiff was provided notice or any opportunity to respond, SCAI Executive Director Melissa Jones-Wommack, who is also a member of the BAT, emailed Wolford on March 31, 2025: "I have reviewed your report, and see that SOS has been involved… At this time, we will move this student through the conduct process for failure to comply and disruptive behavior." The email was sent before Plaintiff received notice or an opportunity to be heard.

23. Before Plaintiff received the April 4, 2025, Notice of Referral, Plaintiff received no direct outreach from SOS and was not informed that SOS had been "involved" anytime between the January 12, 2025, and April 4, 2025 pre-notice period.

24. Wolford responded to Jones-Wommack on April 1, 2025, asking for "the timeline" and "what to expect and when," stating he did "not expect the student to respond well."

25. Before Plaintiff had notice or a chance to respond, Wolford relayed SCAI's framing to departmental leadership: on April 1, 2025 (6:31 a.m.), he told the Department Chair that Plaintiff had been referred to Student Conduct and was being put "through the process for failure to comply and disruptive behavior."

26. On April 3, 2025, in response to the Maxient referral/behavioral incident report, Wolford asked whether the referral letter would instruct Plaintiff "not to contact" him. He stated he was "jumpy," would not be on campus the next day, and asked what to do "if the student shows up to my office next week."

27. Dobson prepared a Notice of Referral dated April 3, 2025, which included an interim no-contact directive; it was served on Plaintiff April 4, 2025. Plaintiff requested to respond in writing as a disability accommodation; the request was granted, but Plaintiff received only a brief description of the allegations and not the underlying evidence.

**D. Request for Accommodation Deprived Access to Meaningful Process.**

28. After notice of charges Plaintiff requested a disability accommodation to proceed in writing; the accommodation was granted on April 4, 2025.

29. Plaintiff received only a short statement of Wolford's allegations and was not provided the evidentiary file, an exhibit list, or written instructions explaining how evidence review, and submission would work in the written process.

30. Dobson imposed strict limits on Plaintiff's written communications during the investigation, including limits on content and/or format, despite notice of Plaintiff's documented impairments.

31. On the morning of April 15, 2025, Plaintiff reported Wolford to Title IX for failure to report.

32. After Plaintiff expressed severe stress related to the SCAI process, Title IX filed a BCAL report listing Plaintiff as a "person of concern."

33. Plaintiff was found responsible for "disruptive conduct" and "failure to comply" on April 15, 2025, without being asked for evidence or allowed to see the evidence used against her.

34. Plaintiff appealed; Dalton denied the appeal and stated that a "legitimate disability that requires accommodations is not an excuse" and that UT made "no error" by not considering Plaintiff's need for support.

**E. No-Contact Ambiguity and Retroactive Applications.**

35. In the first SCAI proceeding, the Notice of Referral was dated April 3, 2025, but served April 4, and contained an interim no-contact provision, leaving a day without notice.

36. Dobson later explicitly told Plaintiff on April 17, 2025, that there was "not a no-contact provision."

37. On July 15, 2025, Soto told Plaintiff not to "contact his clients" because it violated a "contact rule," without tying the instruction to SCAI or Wolford.

38. On August 13, 2025, after Plaintiff stated intent to publish lawfully obtained evidence of disability discrimination, Soto filed a stalking report on Wolford's behalf within hours.

39. Title IX dismissed the stalking matter at the end of day on August 13, 2025, and referred it to SCAI the following day; Wolford, Dobson, and Soto reported Plaintiff to SCAI for "disruptive conduct" and "failure to comply."

40. On August 18, 2025, Plaintiff was served with an Interim Action, stating "Interim suspension: ineligibility to be on campus."

41. In the August 2025 Notice of Referral, Campbell treated a prior interim no-contact reference from SCAI Case #1 and Soto's July 15 "contact rule" directive as establishing a no-contact restriction and violation, despite Dobson's April 17 email stating there was "not a no-contact provision" and Soto's August 14 email stating that no restrictions were assessed by SCAI.

**F. Interim Action and "Ongoing Threat" Branding.**

42. Plaintiff was served a Notice of Referral and Interim Disciplinary Action on August 18, 2025, and was labeled an "ongoing threat," with a no-contact issued prohibiting contact with Wolford and Dobson.

43. The interim letter used language including "Interim Suspension" and "Notice of Ineligibility to be on Campus," and SCAI later called that wording a "mistake."

44. Although UT's published rules contemplate prompt review of interim actions, Plaintiff alleges the interim process was not handled within the stated timeframes and the outcome was not timely issued with required notices of delay.

45. On October 6, 2025, Plaintiff met with Associate Dean of Students Dr. Kelly Soucy regarding the interim action; Soucy questioned Plaintiff about alleged stalking and whether Plaintiff wanted to harm Wolford or Dobson, and Plaintiff denied any such intent.

46. Plaintiff alleges the interim no-contact was upheld despite acknowledgments between January 30, 2025, and August 18, 2025, that Plaintiff was not a threat and that SOS, SCAI, and UTPD reported no threats.

**G. Undisclosed Decision-Makers.**

10

47. Plaintiff was not notified that BAT/BRAC communications were occurring about her, was not provided the content of those communications, and was not given a mechanism to rebut or correct assertions circulating in those channels.

48. Plaintiff alleges that SCAI decisionmakers participated in or received BAT/BRAC communications regarding Plaintiff while Plaintiff was not notified of those communications and was not given their content or an opportunity to respond to assertions circulating in those channels.

49. Post-judgment materials from August 14, 2025, and December 10, 2025, show UT routed Plaintiff through a behavioral threat-assessment/reputational-management infrastructure identified as BAT and BRAC, which Plaintiff was not told was connected to SCAI decision-making.

50. Plaintiff alleges that this apparatus operated in her matter without providing Plaintiff notice of the BAT/BRAC communications, the risk rating(s) assigned, or the materials relied upon, and without providing a process for Plaintiff to rebut those assertions.

51. Plaintiff alleges SCAI administrators are included in BAT communications; Jones-Wommack sits on BAT; Soucy co-chairs BAT and sits on BRAC; and Campbell stated she must review every case with Jones-Wommack.

52. On October 24, 2025, Campbell revoked a previously granted disability accommodation allowing Plaintiff to submit evidence after a meeting and withdrew the promised two-week submission window, without advance notice, thereby preventing Plaintiff from presenting evidence in the manner previously authorized for her processing delay.

53. Plaintiff alleges Campbell called a "mini-BAT" meeting about Plaintiff and that a "no public comments" restriction was enforced on October 31, 2025, following restatement of intent to publish.

54. Plaintiff also alleges that Campbell contacted Wolford's faculty advocates on October 27, 2025, before notice or opportunity to be heard to inform them that "based on the student's behavior we will issue further charges for failure to comply," and that Soucy would go to the BRAC to determine "next steps." Both faculty advocates were also members of the BRAC.

55. Plaintiff alleges that UT Austin violated its own no-contact order twice, before and after Plaintiff was charged in SCAI Case #3, and that she alerted VPLA attorney Christopher Hutto, Soucy, Joseph Jr., and Campbell of this.

**H. Disciplinary Records.**

56. Plaintiff observed through Open Records that her SCAI case file differed from prior versions she had received, including fewer documents and the removal of faculty support letters.

57. Plaintiff alleges SCAI opened and altered a signed and closed document, added a formal no-contact sanction, and presented the change as "amendment" requested by Plaintiff.

58. Plaintiff alleges emails relevant to the August 13 stalking incident were placed into the closed SCAI Case #1 file rather than the later SCAI Case #2 file, obscuring the chronology and supporting a misleading narrative.

**I. Suspension.**

59. After Plaintiff lost the Plea to the Jurisdiction on December 18, 2025, Campbell issued a full suspension and ineligibility to be on any UT campus on December 19, 2025, relying on alleged "clear" directives and a credibility finding against Plaintiff.

60. Plaintiff alleges UT continued to treat Plaintiff as a safety concern in university systems and communications, resulting in ongoing exclusion from campus and loss of access to programs and services.

**J. Ambiguous Directives.**

61. Plaintiff has documented communication and processing impairments that make undefined or vague directives difficult to interpret, particularly where compliance turns on nuanced wording and context.

62. Wolford repeatedly used vague categories (including "personal" versus "academic") as the basis for restrictions and escalation but never identified what those terms meant in practice or how Plaintiff could comply.

63. Wolford admitted on March 5, 2025, that Plaintiff attempted to follow his directives and that his wording was broad and ambiguous, yet he did not provide clarification before escalating the matter into the SCAI process.

64. Plaintiff repeatedly requested that SCAI define the operative terms that governed the alleged "failure to comply," including "personal," "academic," "inappropriate," and "business or academic need," but SCAI never provided definitions or concrete examples.

65. When Plaintiff sought help from the Student Ombudsman and ADA Coordinator regarding the meaning of these terms on October 29-30, 2025, Plaintiff was told that definitions and instructions must come from the office issuing the directives, leaving Plaintiff without any neutral mechanism to obtain clarifying guidance.

66. Soucy acknowledged Plaintiff's confusion during the interim meeting on October 6, 2025, regarding the two definitions of "no-contact" she received but did not clarify the expectations, despite notice that Plaintiff requires detailed context to process directives.

67. SCAI later acknowledged on or around October 28, 2025, that wording in the SCAI Case #2 outcome letter "caused confusion" and issued wording updates, while Plaintiff alleges the record was also altered in ways that changed the stated restrictions and enforcement narrative.

## V. CLAIMS FOR RELIEF

### Count 1 – ADA Title II, Denial of Reasonable Modifications / Effective Communication

42 U.S.C. § 12132; 28 C.F.R. §§ 35.130, 35.160

*Against UT Austin*

68. Plaintiff realleges and incorporates by reference Paragraphs 1–67 of this Complaint as if fully set forth herein.

69. Plaintiff is a qualified individual with disabilities within the meaning of Title II of the ADA;

14

70. Defendant UT Austin is a "public entity" under Title II and operates programs, services, and activities, including student discipline and student conduct proceedings, academic participation, campus access, and related eligibility determinations;

71. Plaintiff's disabilities substantially limit major life activities including cognition/executive functioning and communication, and Plaintiff's documented access needs include clear, unambiguous, and simplified instructions; written memorialization of directives; repetition, cues, and reminders; and adequate time to process, consolidate, organize, and respond to high-stakes communications;

72. UT Austin had notice of Plaintiff's disability-related access needs through Plaintiff's D&A registration and through Plaintiff's requests for disability accommodations in connection with disciplinary and restriction-related communications.

73. UT Austin denied Plaintiff the benefits of its SCAI and academic programs and services and subjected Plaintiff to discrimination by reason of disability by failing to make reasonable modifications and failing to provide effective communication in disciplinary/restriction administration.

74. Specifically, UT Austin:

    a) Used vague and shifting compliance categories and undefined terms to govern Plaintiff's restrictions and alleged violations (including "personal," "academic," "inappropriate," and "business or academic need"); UT treated Plaintiff's inability to decode undefined terms as "disruptive conduct" and "failure to comply" and used that

as the basis for restrictions/exclusion despite notice that Plaintiff has difficulty interpreting vague or indirect language;

b) Refused to provide clear, written definitions and concrete examples of compliant versus noncompliant conduct despite notice that Plaintiff's disability impairs comprehension of vague/indirect directives absent clear written standards;

c) Imposed strict limits on communication and time-compressed demands in high-stakes disciplinary/restriction communications without disability-informed explanation, cues, or adequate processing time;

d) On October 24, 2025, revoked a previously granted disability accommodation allowing Plaintiff to submit evidence after a meeting and withdrew a promised two-week submission window, without advance notice;

e) Plaintiff requested **specific, low-burden communication modifications**—including stable written definitions of operative restrictions, concrete examples of compliant/noncompliant conduct, written memorialization of directives, and reasonable time to process and respond—so she could understand and comply;

f) These requested measures do **not** seek to lower academic standards or excuse misconduct; they are **process/communication accommodations** that enable a disabled student to access and comply with existing standards; and

g) UT refused or withdrew these measures despite notice, and instead enforced "failure to comply" under undefined terms in a manner that predictably penalized Plaintiff's disability-linked processing/communication limitations.

16

75. These failures denied Plaintiff meaningful access to UT Austin's SCAI disciplinary and restriction-related processes, including the ability to understand and comply with restrictions and to present evidence, and increased risk of erroneous enforcement and escalating restrictions and exclusions based on misunderstandings that UT Austin could have reasonably avoided through clear written directives and reasonable modifications.

76. UT Austin continues to enforce and/or propagate restrictions and adverse eligibility consequences against Plaintiff without implementing disability-informed communication standards and modifications, causing ongoing exclusion from programs and services and ongoing irreparable educational harm.

77. Plaintiff is entitled to declaratory relief that UT Austin's acts and omissions violate Title II and its regulations.

78. Plaintiff is entitled to preliminary and permanent injunctive relief requiring UT Austin to:

    a) Provide disability-informed effective communication (clear written standards, definitions, and concrete examples) for any restrictions and compliance expectations applied to Plaintiff;

    b) Provide reasonable modifications including adequate time and structured written instructions consistent with Plaintiff's documented limitations;

    c) Cease enforcement of any restrictions or sanctions where the operative standards remain undefined or inaccessible to Plaintiff; and

d) Reinstate and honor disability accommodations for evidence submission and timing, including the post-meeting evidence window revoked on October 24, 2025, or provide an equivalent reasonable modification.

### Count 2 - ADA Title II, Retaliation / Coercion / Interference

### 42 U.S.C. § 12203; 28 C.F.R. § 35.134; 28 C.F.R. § 35.130(b)(1)(v)

*Against UT Austin*

79. Plaintiff realleges and incorporates by reference Paragraphs 1–67 of this Complaint as if fully set forth herein.

80. Plaintiff is a qualified individual with disabilities within the meaning of Title II of the ADA;

81. Defendant UT Austin is a "public entity" under Title II and operates programs, services, and activities, including student discipline and student conduct proceedings, academic participation, campus access, and related eligibility determinations;

82. Plaintiff's disabilities substantially limit major life activities including cognition/executive functioning and communication, and Plaintiff's documented access needs include clear, unambiguous, and simplified instructions; written memorialization of directives; repetition, cues, and reminders; and adequate time to process, consolidate, organize, and respond to high-stakes communications;

83. UT Austin had notice of Plaintiff's disability-related access needs through Plaintiff's D&A registration and through Plaintiff's requests for disability accommodations in connection with disciplinary and restriction-related communications.

18

**A. Protected Activity and Adverse Actions.**

84. Plaintiff engaged in protected activity by (a) requesting disability accommodations and disability-informed communication standards; (b) repeatedly requesting that UT/SCAI define operative compliance terms and provide workable written directives; (c) challenging disability-discriminatory treatment through internal complaints and external advocacy; and (d) stating intent to publish lawfully obtained information and commentary regarding disability discrimination and inaccessible disciplinary practices.

85. UT Austin took materially adverse actions that would deter a reasonable person with disabilities from engaging in protected activity, including but not limited to:

    a) Revoking previously granted disability accommodations related to evidence submission and timing (including the October 24, 2025 revocation and withdrawal of the promised two-week submission window);

    b) Escalating charges and enforcement actions framed as "failure to comply" in temporal proximity to Plaintiff's disability-related advocacy and stated intent to publish;

    c) Enforcing and/or maintaining speech-related restrictions (including Campbell's "no public comments" restriction on October 31, 2025) after Plaintiff's restatement of intent to publish; and

    d) Continuing to enforce and propagate no-contact and eligibility/campus restrictions based on threat/risk and credibility assumptions that Plaintiff alleges were formed and

circulated through undisclosed BAT/BRAC channels without disability-informed safeguards.

86. The sequence and timing of UT's actions after Plaintiff requested disability-informed definitions/standards and complained of disability discrimination, including communications indicating planned additional charges "based on the student's behavior" and planned BRAC "next steps," by Campbell on October 27, 2025, support a plausible inference that UT's adverse actions were taken because of Plaintiff's protected activity and/or to deter further protected activity.

**B. Retaliation / Coercion / Interference.**

87. Title II's implementing regulations prohibit a public entity from intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right protected by the ADA, or because the individual has exercised ADA-protected rights. 28 C.F.R. § 35.134. The close temporal proximity between (i) Plaintiff's repeated requests for defined, disability-accessible directives and stated intent to publish, and (ii) the October 24 accommodation revocation, October 27 escalation communication, and October 31 speech restriction, supports a plausible inference of retaliatory motive.

88. UT Austin's adverse actions described above, including withdrawal of promised accommodation time, escalation of charges tied to alleged "compliance" under undefined terms, and imposition/maintenance of speech-related restraints, constitute retaliation and/or coercive interference with Plaintiff's exercise of ADA rights, including Plaintiff's right to seek reasonable modifications and to oppose disability discrimination.

20

**C. Significant Assistance to a Discriminating Party.**

89. Title II regulations also prohibit a public entity from providing significant assistance to any entity or person that discriminates on the basis of disability. 28 C.F.R. § 35.130(b)(1)(v).

90. UT provided significant assistance by using university-controlled disciplinary channels and BAT/BRAC-linked personnel to amplify and operationalize Wolford-aligned allegations into restrictions and enforcement actions, while withholding from Plaintiff the operative inputs and definitions needed to comply.

91. Plaintiff alleges that Wolford and allied personnel initiated and advanced actions against Plaintiff based on disability-linked communication traits and Plaintiff's requests for accommodations/clarification of vague directives.

92. Plaintiff alleges that Wolford and allied personnel advanced allegations and escalation requests that treated Plaintiff's disability-linked communication traits and accommodation/clarification requests as misconduct or safety-coded noncompliance:

    a) Using faculty advocates and other staff and administrators who served on BAT/BRAC to receive and transmit disciplinary/escalation communications about Plaintiff, including communications indicating imminent additional charges and planned BRAC "next steps";

    b) Convening or utilizing BAT/BRAC communications about Plaintiff that Plaintiff was not notified of and could not rebut, while those communications informed restrictions, enforcement, and escalation; and

21

c) Enforcing and maintaining restrictions and sanctions derived from that pipeline, including speech-related restrictions and compliance enforcement under undefined terms, in a manner that denied disability-informed communication and reasonable modifications.

93. By providing institutional channels, personnel, and enforcement mechanisms that materially assisted Wolford and allied personnel in pursuing disability-linked escalation and restrictions—rather than providing disability-informed modifications and neutral safeguards—UT Austin provided significant assistance to a discriminating party in violation of 28 C.F.R. § 35.130(b)(1)(v).

**D. Ongoing Harm and Entitlement to Relief.**

94. UT Austin's retaliatory and interfering conduct is ongoing because UT continues to enforce and propagate the challenged restrictions and determinations, which chill Plaintiff's exercise of ADA-protected rights and impede Plaintiff's access to programs and services.

95. Plaintiff is suffering ongoing irreparable harm, including chilled speech and petitioning, loss of access to campus and programs/services, and continuing eligibility consequences that cannot be fully remedied after the fact.

96. Plaintiff is entitled to declaratory relief that UT Austin's actions and practices described above violate Title II's anti-retaliation/interference provisions and the "significant assistance" prohibition.

97. Plaintiff is entitled to preliminary and permanent injunctive relief requiring UT Austin to:

22

a) Cease retaliating or interfering with Plaintiff's ADA-protected requests and opposition to discrimination;

b) Rescind and cease enforcement of any "no public comments" or similar speech restraints imposed in response to Plaintiff's protected activity;

c) Reinstate and honor disability accommodations for evidence submission and timing (including restoring an equivalent of the two-week post-meeting submission window) and provide disability-informed communication standards;

d) Cease using BAT/BRAC-linked faculty advocates or similar channels to escalate charges or restrictions against Plaintiff without notice and an opportunity to respond; and

e) Prohibit University personnel from using or propagating restrictions that are based on disability-linked mischaracterizations or on enforcement under undefined terms without disability-informed clarification

### Count 3 – § 1983 Procedural Due Process, Fourteenth Amendment

*Against Davis in his official capacity*

**A. Procedural Due Process.**

98. Plaintiff realleges and incorporates by reference Paragraphs 1–67 of this Complaint as if fully set forth herein.

99. Plaintiff has protected liberty and property interests in continued access to public-university education and university programs/services, and in being free from arbitrary exclusions and

23

stigmatizing sanctions imposed without fair procedure and "ongoing threat" branding plus exclusion from campus/programs.

100.  UT Austin, through its officers and agents, imposed and continues to enforce restrictions and sanctions affecting Plaintiff's campus access, participation, and eligibility, including no-contact and speech-related restrictions and campus ineligibility/exclusion, based on threat/risk determinations and credibility assessments.

a)  Plaintiff was not provided timely, specific written notice of the operative factual assertions and evidence used to support threat/risk and credibility determinations;

b)  Plaintiff was not provided an explanation of the evidence relied upon; and

c)  Plaintiff was not afforded a meaningful opportunity to present her side to a neutral decisionmaker before severe restrictions and exclusions were imposed or maintained.

101.  Plaintiff alleges that key determinations informing these restrictions were made and circulated through undisclosed BAT/BRAC channels and related communications that were not disclosed to Plaintiff and were not subject to a process that provided Plaintiff notice of the operative assertions and a meaningful opportunity to rebut or correct them.

102.  Plaintiff was not notified that BAT/BRAC communications were occurring about her, was not provided their content, and was not given a mechanism to rebut or correct assertions circulating in those channels before restrictions were imposed or maintained.

103.  Plaintiff further alleges that SCAI and Student Affairs decisionmakers participated in or received BAT/BRAC communications while Plaintiff was simultaneously constrained by

24

communication limits and undefined compliance standards, creating a substantial risk that restrictions were based on undisclosed information Plaintiff could not contest.

104. Plaintiff was not provided the BAT/BRAC assertions/materials or the factual basis for the threat/risk and credibility determinations, and Plaintiff was not given a meaningful opportunity to respond to those assertions before restrictions were imposed or maintained by a neutral reviewer.

   a) Under the *Mathews* balancing factors, the private interests at stake—continued access to campus, programs, and educational participation, and freedom from stigmatizing "ongoing threat" branding—are substantial; the risk of erroneous deprivation is high where restrictions are based on assertions and credibility judgments that Plaintiff cannot see or rebut; and the probable value of additional safeguards is high because limited measures (disclosure of operative assertions/materials, clear standards, and neutral review) would materially reduce error with minimal administrative burden.

   b) At minimum, due process required timely notice of the operative allegations and evidence, an explanation of the basis for the restrictions, and a meaningful opportunity to present Plaintiff's side before severe exclusionary measures were imposed or maintained.

105. By imposing and maintaining restrictive measures through undisclosed, ex parte processes and without clear notice of operative standards and evidence, Defendants deprived Plaintiff of due process of law.

106. The due-process violations are ongoing because Defendants continue to use the challenged restrictions and related determinations as predicates for continuing exclusions and eligibility consequences.

107. Plaintiff is entitled to declaratory relief that Defendants' ongoing practices violate procedural due process.

108. Plaintiff is entitled to preliminary and permanent injunctive relief requiring Davis and UT Austin officers/agents to:

a) Cease enforcing restrictions and exclusions based on undisclosed BAT/BRAC communications or undisclosed threat/risk determinations;

b) Disclose the operative assertions and materials relied upon to impose/maintain restrictions affecting Plaintiff and provide a meaningful opportunity to rebut; and

c) Ensure that any future restrictions are imposed only through transparent, disability-informed procedures with neutral review.

**B. Void for Vagueness.**

109. The Due Process Clause prohibits enforcement of restrictions and sanctions that are so vague that persons of ordinary intelligence must guess at their meaning or that invite arbitrary and discriminatory enforcement.

110. Defendants enforced and maintained restrictions and "disruptive conduct" and "failure to comply" determinations using undefined and shifting terms, including "personal,"

26

"academic," "inappropriate," "clients," "contact rule," and "business or academic need," and inconsistent formulations of "no-contact."

111. Defendants relied on these undefined terms as reflected in emails to support and maintain restrictions and adverse eligibility consequences against Plaintiff, including that the interim measure was "just to get [Plaintiff] through the process," and that "inadvertent contact" would not be. violation, while simultaneously holding Plaintiff responsible for inadvertent contact.

112. Plaintiff repeatedly requested definitions and concrete examples of compliant versus noncompliant conduct; Defendants did not provide them.

113. Because the operative standards were undefined and inconsistently communicated, Plaintiff lacked fair notice of what was prohibited or required and faced discretionary, after-the-fact interpretation.

114. The vagueness was especially harmful given Defendants' notice of Plaintiff's documented communication/processing impairments.

115. Defendants' continued enforcement under vague standards violates due process; Plaintiff seeks prospective relief requiring clear written standards before enforcement.

116. Plaintiff is entitled to declaratory relief that Defendants' enforcement of restrictions and "failure to comply" determinations under undefined and shifting terms violates due process.

117. Plaintiff is entitled to preliminary and permanent injunctive relief requiring Davis and UT Austin officers/agents to:

a) Cease enforcing any restriction or "failure to comply" determination against Plaintiff based on undefined or inconsistently communicated terms; and

b) Provide clear, written definitions and concrete examples of compliant versus noncompliant conduct—tailored to Plaintiff's documented communication/processing limitations—before imposing or enforcing any future restrictions.

### Count 4 - § 1983 Retaliation, First Amendment

*Against Davis in his official capacity*

118. Plaintiff realleges and incorporates by reference Paragraphs 1–67 of this Complaint as if fully set forth herein.

119. Plaintiff engaged in protected First Amendment activity including petitioning for redress, advocating regarding disability discrimination, and stating intent to publish lawfully obtained information and commentary about matters of public concern relating to university disciplinary practices and disability access.

120. Following Plaintiff's protected activity and stated intent to publish, UT Austin actors escalated enforcement actions and imposed or maintained speech-related restrictions, including "no public comments" and related restraints on Plaintiff's ability to speak about her experience and UT processes.

a) On October 31, 2025, Campbell imposed and/or enforced a "no public comments" restriction restricting Plaintiff's ability to speak about her experience and UT

processes; such a restriction would deter a person of ordinary firmness from engaging in protected speech and petitioning activity;

b) On August 13, 2025, within hours of Plaintiff stating intent to publish lawfully obtained information and commentary, UT actors reported Plaintiff for "stalking" and initiated escalation into disciplinary channels; and

c) After Plaintiff's protected activity and record challenges, UT maintained and propagated restrictions by altering and/or supplementing SCAI records to reflect formal restrictions described as "interim suspension" or "interim action," thereby reinforcing the enforcement narrative supporting continued exclusion.

121. The timing and sequence support an inference that UT's adverse actions were substantially motivated by Plaintiff's protected activity.

122. The "no public comments" restriction operates as a prior restraint on speech and is not narrowly tailored.

123. The restriction is overbroad because it sweeps protected speech about matters of public concern beyond any legitimate safety interest.

124. These restrictions operate as a prior restraint and/or retaliatory penalty on protected speech, and they are not narrowly tailored to a legitimate governmental interest where Plaintiff made no threats and UT had less restrictive means to address any legitimate safety concern, including enforcing true-threat and harassment standards.

125. Plaintiff is suffering ongoing irreparable harm because the challenged restrictions chill speech and prevent Plaintiff from engaging in protected advocacy and public commentary.

126. Plaintiff is entitled to declaratory relief that Defendants' ongoing restraints and retaliatory actions violate the First Amendment.

127. Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendants from enforcing any "no public comments," publication bans, or similar speech restraints against Plaintiff, and requiring that any restrictions be narrowly tailored, time-limited, and imposed only through transparent procedures that satisfy the First Amendment.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant emergency equitable relief and enter:

1. **Temporary Restraining Order.** A Temporary Restraining Order, effective immediately and remaining in force until the Court rules on Plaintiff's request for a preliminary injunction, enjoining Defendants, as well as their agents, servants, employees, attorneys, and those in active concert with them, who receive actual notice of the order from:

   a) Conducting or finalizing any student-conduct hearing, disposition, sanction decision, or "outcome" in Plaintiff's pending matter(s) that relies on undisclosed decision-making inputs, undisclosed risk-assessment processes, or undisclosed BAT/BRAC communications and pre-notice emails indicating outcome/track selection before Plaintiff's notice, as described in Plaintiff's declarations and exhibits; and

30

    b) Enforcing, relying on, republishing, circulating, or treating as operative any disputed disciplinary findings, "threat"/risk characterizations, or restrictions as a predicate for additional restrictions, eligibility determinations, adverse action, progressive discipline, or escalation while Plaintiff's request for emergency injunctive relief is pending.

2. **Non-use / non-propagation order.** Defendants, and their officers, agents, employees, and all persons acting in concert with them, are enjoined from relying on, enforcing, citing, disseminating, or propagating the **challenged disciplinary findings, sanctions, and "ongoing threat" determinations**—and any campus-ineligibility, no-contact, speech-restraint, or standing consequences flowing from them—as a predicate for additional restrictions, eligibility determinations, campus access decisions, or participation consequences affecting Plaintiff's access to UT programs and services **during the pendency of this action.**

3. **Preliminary Injunction (During Litigation).** After notice and an expedited hearing, a Preliminary Injunction maintaining the protections above through final judgment, including:

    a) Requiring that any disciplinary proceeding affecting Plaintiff proceed only before a **neutral decisionmaker** and only on a record that is disclosed to Plaintiff in time to respond;

    b) Prohibiting Defendants from imposing or maintaining movement/access restrictions or other conditions based on undisclosed risk scoring, undisclosed team recommendations, or off-record communications; and

31

    c) Requiring Defendants to provide reasonable process modifications and effective communication measures necessary for Plaintiff to meaningfully participate in and understand the process (including timely access to evidence and reasons, and stable, written definitions of operative prohibitions as applied to Plaintiff).

4. **Restoration of Standing and Eligibility Pending Merits.** An order requiring Defendants, pending final judgment, to:

    a) Restore Plaintiff to **good standing/eligible status** for University programs and services to the extent that eligibility was removed or impaired by the challenged disciplinary findings, undisclosed tribunal inputs, or speech-linked enforcement; and

    b) Remove any "holds," flags, or adverse eligibility designations that flow from the challenged records.

5. **No Prior Restraint / No Speech-Linked Restrictions.** An order prohibiting Defendants from enforcing or threatening any restriction that bars Plaintiff from making **public statements** about her experience or evidence (including any "no public comments" or "targeting" directives), and prohibiting retaliation based on Plaintiff's protected speech.

6. **Carve-Out for Genuinely New Conduct.** Clarification that nothing in the TRO/PI prevents Defendants from addressing **genuinely new, independent conduct** on an independent record, provided Defendants do not use the challenged findings, records, or undisclosed inputs as a predicate, justification, or escalation factor.

7. **Expedited Proceedings.** An order setting an expedited schedule for:

    a) Defendants' response;

    b) A preliminary-injunction hearing; and

    c) Any limited, targeted evidentiary submissions necessary to resolve the emergency issues.

8. **Security.** Waiver of security or, alternatively, the setting of **nominal security** under Fed. R. Civ. P. 65(c) given Plaintiff's financial circumstances and the public-interest nature of the requested relief.

9. **Other Relief.** Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff seeks only declaratory and injunctive relief but to the extent any issues in this action are triable by a jury, Plaintiff demands a trial by jury on all such issues.

## VIII. EVIDENTIARY MATERIALS

Plaintiff incorporates by reference the attached exhibits pursuant to Fed. R. Civ. P. 10(c), including Exhibits 1-11, EA_1-111,which are part of this pleading for all purposes.

33

## IX. VERIFICATION

I, Jennifer Ferrell Brantley, declare under penalty of perjury that I am the Plaintiff in this action and that the factual allegations in this Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Executed on February 9, 2026, in Austin, Texas.

/s/ *Jennifer Ferrell Brantley*
Jennifer Ferrell Brantley

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing has been served upon counsel for all parties to

this proceeding as identified below through the court's electronic filing system as follows:


Stephen D. DeVinney
Assistant Attorney General
General Litigation Division
Office of the Texas Attorney General
P.O. Box 12548
Austin, TX 78711
stephen.devinney@oag.texas.gov
737-224-2365
Attorney for Defendant,
The University of Texas at Austin


Austin, Texas, this 9th day of February 2026.



/s/ *Jennifer Ferrell Brantley*

Jennifer Ferrell Brantley

Plaintiff, Pro Se