UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| **JENNIFER FERRELL BRANTLEY**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNIVERSITY OF TEXAS AT AUSTIN**, *and* **PRESIDENT JAMES E. DAVIS**, *in his official capacity as President of the University of Texas at Austin,*<br><br>*Defendants.* | Civil Action No. _____ |

## EMERGENCY DECLARATION IN SUPPORT OF INJUNCTIVE RELIEF

1. I am the Plaintiff in this case. I have personal knowledge of the facts stated in this Declaration, and, if called as a witness, I could and would testify competently to them.

## I. BACKGROUND

2. I am an undergraduate student at the University of Texas at Austin ("UT") and have been pursuing my degree in the Department of Government, where I maintain a 4.0 and recently completed department honors.

3. I am a qualified person with multiple disabilities that affect one or more major life activities, including learning, reading, thinking, concentrating, working, hearing, seeing,

EA_ 1

speaking, processing speed, remembering, communicating, caring for oneself, interacting with others and maintaining social relationships.

4. I am registered with the University's Disability and Access ("D&A") office.

5. I have attached to this Declaration true and correct copies of records that I either (1) sent or received through my UT email or personal email; (2) obtained from UT Austin through Open Records responses; or (3) personally downloaded from accounts I control where they are maintained in the ordinary course. I can testify to the manner in which these exhibits were created, received, stored, and retrieved.[1]

## II. FACTS

6. On July 31, 2025, I received an email from Student Conduct and Academic Integrity ("SCAI') that was forwarded to me by then Vice President for Legal Affairs ("VPLA") attorney, Esteban Soto, in response to my request to challenge my SCAI file under the Family Education Rights and Privacy Act ("FERPA"). SCAI basically stated that because I elected to proceed in writing rather than meet and did not submit a "Case Document Request" form during the investigation—which I did not understand at the time—SCAI did not provide me copies of the evidence. I requested to proceed in writing as an accommodation, and SCAI's position left me unable to access and retain the evidence needed to respond in real time. I was not told that choosing the written format would change evidence access in this way.

---

[1] *See* TAB 8-26, EA_24-101

EA_ 2

7. The same email also claimed that I "waived" any FERPA amendment for the same reason.

8. On October 30, 2025, on referral from the Student Ombudsman, UT's ADA Coordinator wrote that facilitating communication between me and SCAI was "beyond the scope" of her role and that I must obtain any non-dictionary meanings of SCAI's operative terms (e.g., "personal," "academic," "business") "from them directly." SCAI has still not provided stable definitions.[2]

9. Because restrictions remain in force, the inability to obtain stable definitions in real time chills my speech and creates a continuous risk of inadvertent violation and escalation, particularly when SCAI enforces compliance through after-the-fact interpretations.

## A. Threat Labeling and Interim Restrictions.

10. On August 18, 2025, SCAI issued a Notice of Interim Discipline labeling me an "ongoing threat" to campus safety and imposing interim restrictions including ineligibility to be on campus and a no-contact directive.[3]

11. On October 31, 2025, after I had already been charged in Case #3, SCAI provided a "clarification" stating that the no-contact expectations included a prohibition on public comments that "target Scott Wolford and Brianna Dobson."[4]

---

[2] *See* 11. Student Ombuds Referral, EA_100-101
[3] *See* 8. Interim Action, EA_74-91
[4] *See* 9. "No Public Comments," EA_92-93

EA_ 3

12. My purpose in referencing a website was to speak about my own experience, including disability accommodations, due process concerns, and my efforts to petition for amendment of my file.

13. I have never threatened violence or physical harm toward anyone, and I have not called for violence. In interactions and communications I have received from UT personnel, I have been told that I am not considered a threat; my communications reflect frustration and strong language at times, but they did not include threats of violence or unlawful conduct. **I have not seen Dr. Scott Wolford since December 3, 2024**, and I have not sought in-person contact. I am in the same department, and I do not desire further contact.

14. After I challenged the no-contact, it was upheld. UT's Institutional Rules § 11-502(d) (Interim Action) require notice of the outcome within the specified timeframe and, if delayed, written notice explaining the delay. My hearing occurred October 6, 2025. The decision upholding the no-contact was dated October 16, 2025, and I received no notice explaining any delay.[5]

15. During the October 6, 2025, meeting, Dr. Soucy stated that email volume often increases when a student is in distress, and her notetaker confirmed that observation. Based on my subsequent conversations with UT personnel, I understood that similar situations are commonly addressed through support rather than discipline.

16. On October 16, 2025, when I asked why the no-contact was upheld after I believed I had shown I posed no threat or risk to Wolford, Soucy explained that it's what I wanted, even

---

[5] *See* https://catalog.utexas.edu/general-information/appendices/appendix-c/student-conduct-and-academic-integrity/ (Sec. 11-502. Interim Action)

EA_ 4

though I challenged the sanction. The next day, in a recorded phone call, Soucy told my mother it's what **she** wanted. SCAI's letter stated there was no reason to alter the terms of the no-contact. UTPD notes from around August 22, 2025, reflect it was what Wolford wanted and that he said SCAI was not "doing enough" to restrict me.[6]

17. Internal emails I obtained reflect statements attributed to me, including that I "know where he lives and will show up at his house if I want to." I did not make this statement any email.[7]

18. The no-contact was presented to me as protective. In the recorded call, Dr. Soucy told my mother I could request a permanent no-contact so I would "never hear from [Wolford] again," and she stated she is "over student conduct."[8]

19. In that same recorded call, Dr. Soucy told my mother I was likely in "fight or flight," described my emails as a "trauma response, 100%," and stated Dr. Wolford "doesn't understand" it.[9]

20. Based on Soucy's statements and the records I received, I understood that the continued restrictions were being justified primarily by Wolford's subjective reactions to my communications rather than by any objective, pre-defined standard.

21. During Fall 2024, while enrolled in Wolford's course, I experienced difficulties receiving accommodations: my notetaker accommodation was frustrated; my request for a dictionary was not acknowledged; I was not told how accommodations would apply in

---

[6] *See* 8. Interim Action, EA_81; EA_82 (02:54); EA_84 (05:39), (06:49), (06:55), (07:02); EA_91
[7] *See* ¶ 13; 8. Interim Action, EA_74
[8] *See* 8. Interim Action, EA_84 (07:02)
[9] *See* 8. Interim Action, EA_84 (06:49), (06:55); EA_85 (10:27)

EA_5

his course; and my attempts to clarify exam wording were not addressed. On the second exam, October 29, 2024, I did not receive an exam resource (a timeline) that other students received, and I was not provided the promised opportunity to ask clarifying questions. This occurred **12 days after** I raised concerns about favoritism in Wolford's class on October 17, 2024, and he attempted to mislead me on what other students were provided. I later learned that my Title IX report of sexual assault was placed into my disciplinary file by Wolford, and the anniversary of my assault was the day of Wolford's second exam. The timing of these events, and the inclusion of sensitive information in a disciplinary context, has had ongoing effects on my well-being.

22. Soucy is the co-chair of the Behavioral Assessment Team ("BAT") with Patrick Joseph Jr. of SOS.[10] Soucy also sits on the Behavior Risk Assessment Committee ("BRAC"), where she is listed as the only "student advocate" among approximately 22 members.[11]

## B. The Conduct Process.

23. Joseph Jr. is the SOS staff member who assisted Wolford with responding to my emails during Spring 2025 and advised him on referring me to SCAI. Based on emails and communications I received, Joseph Jr. reviewed my emails, helped draft or edit Wolford's responses, and after Wolford made the referral, Joseph Jr. served as my SOS caseworker and "managed" my case. I later learned in August 2025 that Joseph Jr. participated in BAT processes and understood that information from my interactions would be shared within that structure.

---

[10] *See* 2. Behavior Assessment Procedures, EA_33
[11] *See* 2. Behavior Assessment Procedures, EA_34-37

24. When Wolford referred me to SCAI on March 31, 2025, Melissa Jones-Wommack, Executive Director for SCAI, wrote that she could see that SOS had "already been involved" to "disrupt" my behavior.[12] From the records I have received, I was not aware of any SOS intervention of that kind prior to the referral; Joseph Jr.'s outreach efforts were not implemented as described. In the same communications, Jones-Wommack wrote to Wolford that they would "Run [me] through the process for failure to comply and disruptive conduct." These communications occurred before I received formal notice of charges. I also believe the 26-day gap between January 12, 2025 (Wolford's first BCAL report) and February 7, 2025 (his first direct outreach to me) is consistent with internal escalation outside my view. The basis for that belief is the timing and content of the email chain and my later discovery of BAT and BRAC involvement.

25. Based on records I later obtained, and the structure described in UT materials, BAT involves coordination among UT administrators, including personnel connected to legal and student-safety functions. As a result, decisions and guidance affecting my restrictions and conduct status could be influenced by communications occurring outside the published SCAI process and outside my presence.[13]

26. In communications with Jones-Wommack and Dobson, Wolford stated that he was afraid of me "showing up at his office," that he was "jumpy," and that he doesn't "know what to expect here."

---

[12] See 5. Pre-Notice and Hearing Emails, EA_46
[13] *See* 2. Behavior Assessment Procedures, EA_24-32; 6. SCAI, BAT/BRAC Entanglement, EA_50-69; 8. Interim Action, EA_74

27. In a March 5, 2025, email to Joseph Jr., Wolford wrote that I had mostly followed his directive to keep communications confined to academic matters, but he also acknowledged the ambiguity of what constitutes "academic," stating it was **ambiguous**. Wolford had repeated notice of my communication and processing impairments, including my difficulty identifying critical information in ambiguous communications. **This matters because UT has repeatedly characterized Wolford's directives as "clear," while his own email reflects that he understood the directives were broad and ambiguous.** Wolford also wrote that he was happy to "clarify" that he would "refer [me] to SCAI," but I was never provided that clarification directly.

28. I filed an Office for Civil Rights ("OCR") complaint on July 9, 2024. On January 3, 2025, I received outreach from an OCR attorney and immediately emailed Wolford to inform him. Nine days later, on January 12, 2025, Wolford made his first Behavior Concerns Advice Line ("BCAL") report.[14]

29. Wolford was not reporting during the Fall 2024 semester. A Title IX intake coordinator told me on April 23, 2025, that Wolford had been "reporting" during Fall 2024. I have made requests to UT Open Records for productions, but I have not seen documentation showing that Wolford made reports during Fall 2024. In a September 2025 meeting, when I stated that Wolford had not been reporting, the Title IX Director of Intake did not contradict that statement.

**C. BAT and BRAC.**

---

[14] See 4. OCR Attorney Outreach, EA_41-45

EA_ 8

30. UT Human Resources' "Workplace Threats" guidance encourages employees to report subjective discomfort about another person and lists broad, non-specific descriptors (including academic struggles, "complaints," and affect/attitude descriptors) as potential indicators. The guidance directs employees to begin by making a report through BCAL.

31. I was not offered stable, transparent support options with information I could reliably access and understand to protect my education and avoid escalation. I believe the lack of transparency is connected to the "threat" framing being applied to me internally based on Wolford's subjective descriptions. The resulting restrictions and disciplinary outcomes have removed me from eligibility for honors, scholarships, and positions on campus and have created reputational and educational consequences that affect graduate-school or nursing-school applications.

32. UT's Office of General Counsel ("OGC") has sought rulings from the Texas Office of the Attorney General ("OAG") to withhold (a) my threat assessment results and (b) Dr. Wolford's timeline of contact with the VPLA relative to my Office for Civil Rights ("OCR") complaint. In at least one request, OGC characterized me as attempting to "circumvent discovery through the TPIA."[15]

33. One vendor UT uses for threat assessment training/resources, the National Association for Behavioral Intervention and Threat Assessment ("NABITA"), publishes guidance emphasizing that higher-education conduct/risk decisions should integrate disability

---

[15] *See* 7. OGC Request for Ruling, EA_70-73

EA_ 9

context and the interactive process rather than treating disability and conduct as separate tracks.[16]

34. I cannot see the risk rating/threat level/priority level assigned to me, the rubric or criteria used to assign it, or the tools/training applied. Information is used against me before I can see or contest it. This is irreparable harm because UT can maintain restrictive status based on an undisclosed risk framework that I cannot access or challenge while it is being applied.

35. The BAT and BRAC are not described in SCAI's published student-facing materials that governed my cases. Before I obtained records through Open Records and file challenges, I had no notice that these teams existed or that they informed conduct outcomes. I found only limited references in UT materials, including (as I understand it) an audit reference and an Emergency Operating Procedures manual.

36. Based on the records the UT internal audit of the BAT, SOS presents student situations to a weekly BAT meeting, and a risk priority/rating framework is used to triage cases. I was not informed this process existed while I was interacting with SOS. I did not have access to what information was being used, how it was characterized, or any way to challenge the assessment. I understand this information was used as an input to SCAI decisions, including because SCAI personnel participate in the BAT process.[17]

37. I learned of BAT only after I found a reference in an email included in the third version of my SCAI Case #1 file on August 14, 2025. I did not learn of BRAC until early

---

[16] *See* ¶ 35-36; 2. Behavioral Assessment Processes, EA_24-32
[17] *See* 2. Behavioral Assessment Processes, EA_26-28

December 2025, when an Open Records response produced an email chain involving

Soucy, SCAI administrator Natalie Campbell, and Wolford's faculty advocates.

38. That email chain reflects Campbell and Soucy discussing an "Emergency Mini-BAT"

with Joseph Jr. and Jones-Wommack and discussing obtaining Wolford "relief" from my

emails after I restated my intent to publish evidence of disability discrimination.

Campbell wrote words to the effect of: "She's threating to put the website up again." The

chain further reflects Soucy stating she was "going to the BRAC" to "find out next

steps," and discussing restricting my email account without notice to me.[18]

39. These communications occurred before I was charged or given notice in SCAI Case #3,

and the "no public comments directive occurred after I had already been charged and the

no-contact had been in place since August 18, 2025.

## D. The Campus "Event."

40. In the same email chain referenced in ¶ 38, Campbell mentioned a "public speaking

event" for Wolford on November 11, 2025, and indicated that he needed "close patrol"

from UTPD.[19]

41. I requested records relating to this alleged event, including any police report or CAD. UT

Austin and Austin PD Open Records produced no responsive records for the relevant

period of October 21-30, 2025. I also found no campus calendar entry, social media post,

or campus flyer advertising a "public speaking event" for Wolford. Wolford's CV,

---

[18] *See* 6. SCAI, BAT/BRAC Entanglement, EA_63-69; 8. Interim Action, EA_77-79 (8/18/25-broad no-contact); 9. "No Public Comments" (10/30/25)
[19] *See* 6. SCAI, BAT/BRAC Entanglment, EA_67

updated November 24, 2025, does not list a speaking event on November 11, 2025. On January 5, 2026, UT Open Records produced a flyer with no name on it that described what appears to be Wolford's regularly scheduled Tuesday-morning undergraduate class.

42. Based on the absence of any public notice and the lack of responsive police/CAD records, I did not have any way to know of a separate "public speaking event" on November 11, 2025. This matters because UT's internal communications framed the situation as requiring heightened patrol and threat precautions without providing me notice of any such event or basis for the framing.

43. The OCG has requested a ruling from the OAG to withhold Wolford's communications to UTPD.

### E. SCAI Documents.

44. The SCAI matters at issue originated from Wolford. Case #2 was initiated on August 13, 2025, by Soto, Dobson, and Wolford after Soto forwarded the July 31, 2025, email.[20] In the materials I later received, Case #2 includes a report framing my communications as stalking based on emails received by Soto, Soto's paralegal, opposing counsel and counsel's paralegal, Wolford, and Dobson, after I stated intent to publish a website to inform other disabled students of their rights. He was not singled out or targeted, and the timing is significant: the report was made three days after I stated that my abusive former partner used to file false stalking reports against me, and approximately two hours after I

---

[20] *See* ¶¶ 6-7

stated intent to publish and advocate on campus. **I had also requested a campus safety plan stating that I "expect to be protected" from the "falsehoods" of Wolford.[21]**

45. Instead of the requested campus safety plan. I was hit with new SCAI charges, including the broad no-contact that limits my movement and speech.[22]

46. Case #2 relies heavily on the existence of a "no-contact" order that I was never sanctioned with and was not given notice of as an order in Case #1. There was no no-contact provision in the Case #1 outcome. Dobson emailed me on August 17, 2025, that I should not contact Wolford without a "business or academic need." On August 14, 2024, Soto stated that SCAI "did not assess any restrictions." I understood Dobson's instruction to still allow me to advocate for myself, pursue file amendment, and criticize state actors at a public university on matters of public concern (disability discrimination). Nonetheless, SCAI later held me responsible for violating a "no-contact" order that, as reflected in the documents I received, had not existed as an imposed sanction in Case #1.

47. SCAI Case #1 (at issue in this appeal) was closed on July 18, 2025, and I received a "case closed" notification and survey. Case #2 was opened on August 13, 2025, and includes emails sent to Wolford in early August. After Case #2 was opened, Case #1 was reopened and additional documents referencing the website I was creating, along with my "significant assistance to a discriminating party" theory, were added to the Case #1 file. Based on the timing and the content of the re-opened file, I understood this to obscure

---

[21] *See* ¶ 48
[22] *See* Interim Action, EA_74-91

what was occurring in the period immediately preceding the stalking framing in Case #2. Wolford's spouse accepted the Department Chair position that morning.

48. On January 9, 2026, I received records related to my SCAI Case #2 file from an Open Records request in October 2025, for Wolford's report of stalking on August 13, 2025. Those records reflect Wolford making materially misleading, distorted, or false statements to police through victim services and/or counselors, including statements that SCAI was not "doing enough to restrict" me. **The records also reflect that Wolford requested a campus safety plan days after I did and was provided one.**[23] **The records further reflect BRAC detectives going to Wolford's office and training him.**

49. In later August 2025, I requested to speak with the officer assigned to my campus safety plan. I later learned that this officer participates in BAT and BRAC. The officer did not contact me, but records reflect he went to Wolford's office. The detective asked my honors thesis supervisor to hold our meetings over Zoom so I would not enter the building, and records reflect the detective complaining to other BRAC UTPD officers that I had contacted him about my campus safety plan and that he wanted to know how to "handle" it because I "sue everyone [I] disagree with." The detective then reported there was no safety concern for me without ever speaking to me, which ignores the fact that my concern is Wolford's materially misleading, distorted, or false statements, not any threat of physical harm.[24]

---

[23] *See* ¶ 44
[24] *See* ¶ 30; 2. Behavioral Assessment Procedures, EA_34 (Torns)

EA_ 14

50. In the same records, victim services stated that Wolford texted about being named in the lawsuit I filed and that he was sure it would "come up in the next BAT/BRAC meeting."[25]

51. On January 9, 2026, I attempted to report these issues to UTPD. I was told police were not allowed to speak to me because I was "suing [them]." I asked whether I could file a report and was told no. When I asked when this became a policy, the person told me she had just heard about it that day. I was told I could only call UTPD if I had an emergency.

52. A sergeant who supervises BRAC detectives followed up with me on or around January 12, 2026, after I reported this to the VPLA through Open Records and Mr. DeVinney. I submitted documentation, and I told the sergeant I do not want anyone in trouble.

53. It is true that I do not want anyone in trouble. I also do not know how to protect myself in this situation. I have been told UT will not stop without a court order, and the police were the only help I believed I had to obtain relief. I have been left without meaningful assistance and do not know what to do.

54. I am trapped in a closed loop: individuals presented to me as support personnel or points of contact have later appeared in BAT/BRAC records, and they did not identify that role to me at the time. I only now know these connections because of Open Records requests. As a result, information I share while seeking help is circulated into processes I cannot see, cannot access, and cannot contest, and when I seek help elsewhere, I am repeatedly directed back to the same offices or individuals connected to those processes. My reports

---

[25] See 2. Behavioral Assessment Processes, EA_34 (Valdez)

are dismissed at intake and not investigated, and no one has defined or given reasons for anything.

**F. Interim Suspension vs. Interim Action.**

55. SCAI Case #2 was closed on October 24, 2025, after Campbell told me I would have two weeks to submit evidence in my own defense. This two-week period was part of an agreed disability accommodation between D&A and SCAI. Campbell closed the case in less than two weeks without notice to me. I was also told I would be able to appear for the hearing and that D&A and SCAI would allow me additional time to think and process. I submitted a follow-up statement the next day, but it was not included in the file I later received.

56. After I signed and closed the Case #2 document and requested appeal, the Case #2 file was reopened. A formal no-contact order was added on October 28, 2025. The change was presented to me as a "FERPA amendment" I requested, and a "per your request" letter was placed in my file. At that time, I had been issuing broad challenges to my files for months and was repeatedly told I needed to be specific about what I sought to amend. VPLA attorney Christopher J. Hutto narrowed my broad challenge to specific wording regarding "interim suspension."

57. Later that same day, Campbell told me that "interim suspension" and "interim action" mean the same thing and that the terminology likely caused confusion. Nonetheless, the Case #2 document was reopened and altered after I had signed it, and the addition of the formal no-contact was then presented as the fulfillment of a FERPA amendment, without prior notice to me that the document had been reopened and changed. On October 31,

EA_ 16

2025, SCAI further "clarified" that the no-contact included a ban on public comments that "target" Wolford and Dobson.

58. At the same time, SCAI was charging me in Case #3, on October 28, 2025, and treated as a violation an inadvertent midnight inclusion of Wolford on an email that was intended only for my childhood friend.

59. On that same day, Campbell stated that "inadvertent contact" would not be considered a violation, while simultaneously backdating and charging partially for inadvertent contact.

60. UT violated the no-contact expectations twice—before and after I was charged in Case #3—on October 13, 2025, and November 7, 2025, when Wolford and Dobson were included in email communications sent to me. I reported these incidents to Hutto, Soucy, Joseph Jr., and Campbell. Despite UT's own inclusion of Wolford and Dobson in communications to me, I remained subject to the restrictions and was ultimately fully suspended pending hearing.[26]

61. In November 2025, I reported to UTPD a concern about potential record falsification after a friend and former law-enforcement officer advised me to do so. The officer assigned to my report was a BRAC officer. I later learned this assignment was directed by BRAC task force officer Karen Olson, who emailed others instructing that she always wanted me routed to the same person. I have not been informed of the status of this matter; when I asked, I was told UTPD is not allowed to investigate itself.

**G. The Composition of the BRAC.**

---

[26] *See* ¶¶ 10-20; 8. Interim Action, EA_82 (02:54); EA_44 (07:02)

62. In middle-late December 2025, UT Open Records produced an email distribution list identifying BRAC members. Based on that list, BRAC includes Wolford's faculty advocates, Employee Assistance Program ("EAP") counselors, VPLA, UTPD personnel involved in Wolford's campus safety planning, victim services, and staff from Risk and Compliance and Human Resources.[27]

63. In early August 2025, victim services contacted me and presented himself as a social worker who wanted to help. He told me he would send me his email address so I could send documents. When I did not receive his email address for several hours, I located his email address and sent documents to him directly. Records I later received show that he forwarded what I sent to other BRAC recipients in an email with a subject line to the effect of "Check out what Brantley sent me." Those records also show that materials I sent—including a psychological report—were discussed and circulated without my knowledge or consent, including communications involving the Counseling and Mental Health Center ("CMHC"). This occurred without contacting my mother, who holds my Durable Power of Attorney and Medical Power of Attorney and is on file with the VPLA.

64. Records produced by Open Records on January 9, 2026, further reflect that victim services provided or routed those materials into the narrative used in Wolford's harassment framing in August 2025. I have been unable to obtain transparent accountability.

**H. Concealed Decision-Makers and Processes**

---

[27] *See* 2. Behavioral Assessment Processes, EA_34; 6. SCAI, BAT/BRAC Entanglement, EA_67; EA_69; 8. Interim Action, EA_74

EA_ 18

65. Records I obtained through Open Records reflect that UT's response to my situation was not confined to the published SCAI process and included consultation or coordination through BAT/BRAC-related channels. Students are not given notice of these channels in the published SCAI process materials, and I had no ability to know what information was being used or to challenge it in real time.[28]

66. I also experienced indicators that outcomes were being treated as settled before I had a meaningful opportunity to respond. For example, D&A and SCAI agreed to an accommodation allowing additional time to submit evidence after a hearing, but the matter was closed early without notice, and I was told it had "dragged out long enough." I have obtained emails suggesting that restrictions and outcomes were being discussed before I received formal notice or a meaningful opportunity to present evidence.

**I. Honors Consequences and "Sanctions Without Notice."**

67. The December 19, 2025, Case Resolution paperwork in Case #3, which I dispute, states that I am suspended for the entirety of the Spring 2026 semester, that I may not earn any college credit, and that the record will be kept permanently. It further states that, to be eligible to re-enroll, I must complete "all educational sanctions issued by the Office of the Dean of Students," but the paperwork does not identify what those "educational sanctions" are.[29]

68. The same paperwork states that I am ineligible to be on campus and indicates that any waiver for academic purposes is discretionary and must be given by the Vice President

---

[28] *See* 2. Behavioral Assessment Procedures, EA_24-38; 6. SCAI, BAT/BRAC Entanglement, EA_50-69
[29] *See* 10. SCAI Suspension Notice, EA_94-99

for Student Affairs. As a result, my ability to fulfill ordinary academic obligations depends on case-by-case permission and coordination rather than stable, knowable rules stated in the sanction itself.

69. While UT's internal proceedings and this appeal are pending, UT is currently allowing me to attend scheduled classes only. However, the written suspension and associated restrictions remain operative, and the discretionary-waiver structure creates immediate uncertainty and ongoing harm, including the risk of inadvertent violation and escalation based on undefined or shifting expectations.

70. Despite maintaining my GPA, I am ineligible for Honors Day consideration and participation due to the ongoing contested processes and sanctions. I further asked to be allowed to participate and was told "no" because it is an academic policy. I am being excluded from academic participation despite qualifying, UT admits Wolford "doesn't understand" disability, and I content that I have been repeatedly denied equal access to communication and processes. This loss is time-sensitive and cannot be fully remedied after the eligibility window closes.

## J. Financial Aid Jeopardy and Degree Loss

71. UT financial aid records for this academic period reflect that I receive need-based student aid, including the Federal Pell Grant and Texas Advance Commitment ("TAC") awards, along with other grants and loans.

72. UT's restrictions and execution of the suspension prevent me from completing the semester or meeting program conditions tied to enrollment and academic progress, it

EA_ 20

places my financial aid and academic standing at risk. The foreseeable consequences include loss of enrollment status, loss of eligibility or standing tied to aid and honors, and delay or derailment of my degree completion.

73. My TAC eligibility ends at the end of Spring 2026, and I was just awarded a $750 research scholarship for the semester. As a result, disruption of my ability to maintain enrollment and academic progress during this period threatens a time-sensitive loss that cannot be fully remedied after the fact.

## K. Work and Service Impacts

74. I rely on work to support myself when I am able to work, and I work as a delivery driver. The continuing restrictions, the uncertainty around campus access, and the ongoing threat labeling have materially impaired my ability to plan, function consistently, and maintain work commitments. It is difficult to work as a deliver in Austin and not come in contact with some part of a UT campus. Likewise, back home in Dallas, UT Dallas and UT Arlington are in the middle of busy areas.

75. I am a Research Assistant in UT's Department of Human Development and Family Sciences working on a longitudinal project studying bilingualism in children and the effects of translating for one or more parents in service, medical, legal, and civic settings.

76. I also volunteer with the National Archives and Records Administration ("NARA") at the LBJ Presidential Library and Museum on campus, and I have scheduled volunteer shifts during the ongoing period of these proceedings, including shifts spanning late January through February 8, 2026.

EA_ 21

77. The restrictions and uncertainty surrounding my campus access and movement have interfered with my ability to plan, commit to, and participate consistently in these work and service obligations. This harm is ongoing and cannot be fully repaired by a later merits decision because missed work and service opportunities cannot be retroactively performed or restored on the same terms.

**L. Physical Deterioration and Severe Distress**

78. The ongoing SCAI/BAT/BRAC "interventions" and restrictions, combined with the continued maintenance and use of disputed disciplinary records and threat labeling, have caused substantial emotional distress and physical deterioration. I have experienced ongoing fear of inadvertent violation and escalation due to unclear and shifting directives, Wolford reports of stalking, and the uncertainty has affected my ability to function day-to-day.

79. I have experienced severe, unintended weight loss during the pendency of these proceedings. I lost more than 45 pounds between April 15, 2025, and September 20, 2025, and I have lost an additional 10 pounds since then. My physician has evaluated me and has not identified an alternative medical explanation and has attributed the weight loss to stress associated with this situation.

80. This physical decline has materially affected my ability to work and function and reflects the ongoing harm I continue to experience while restrictions remain operative, and UT maintains and relies on the disputed record and threat framing, restricting my speech, movement, and undermining basic procedural fairness at every step.

EA_ 22

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on February 9, 2026.

Jennifer Ferrell Brantley

EA_ 23



**The University of Texas at Austin**

# Behavioral Assessment Processes

*Office of the Dean of Students*

## *January 2025*

**Office of Internal Audits**
*UT Austin's Agents of Change*

EA_ 24



**OFFICE OF INTERNAL AUDITS**
THE UNIVERSITY OF TEXAS AT AUSTIN

*1616 Guadalupe St. Suite 2.302 · Austin, Texas 78701 · (512) 471-7117*
*audit.utexas.edu • internal.audits@austin.utexas.edu*

# Executive Summary

## Behavioral Assessment Processes
Office of the Dean of Students
Project Number: 24.005

### Audit Objective

The objective of this audit was to determine whether The University of Texas at Austin's (UT Austin) behavioral assessment processes promote timely and effective interventions and necessary ongoing monitoring.

### Conclusion

Overall, student behavioral assessment processes promote timely and effective interventions and generally conform to national standards for case management. However, there are opportunities to enhance internal processes related to case monitoring and continued support for students returning to the University after a medical withdrawal. Additionally, there is an opportunity to formalize the Behavioral Assessment Team's (BAT) framework and institutional charge.

### Audit Observations[1]

| Recommendation | Risk Level | Estimated Implementation Date |
|---|---|---|
| Ongoing Monitoring | High | September 2025 |
| BAT Framework and Institutional Charge | Medium | September 2025 |
| Sustained Support for Returning Students | Medium | September 2026 |
| FERPA Training | Medium | August 2025 |

### Engagement Team
Ms. Autumn Gray, Assistant Director, CIA
Ms. Melanie Tolen, Senior Auditor, CPA

---

[1] Each observation has been ranked according to The University of Texas System Administration (UT System) Audit Risk Ranking guidelines. Please see the last page of the report for ranking definitions.

1

EA_ 25

OFFICE OF INTERNAL AUDITS REPORT:  BEHAVIORAL ASSESSMENT PROCESSES

## Detailed Audit Results

### Observation #1 - Ongoing Monitoring

The Behavioral Assessment Team (BAT) does not have a documented process for ongoing monitoring of cases reviewed by the team. After the initial review and risk rating, the assigned Student Outreach and Support (SOS) case manager coordinates interventions and conducts all necessary follow-up. The BAT does not generally review high-risk cases[2] again unless new information is obtained that increases the risk rating.

While high-risk cases typically remain on the case manager's radar until the end of a semester, tracking is done at the discretion and availability of the case manager. Ongoing monitoring by the BAT can help ensure that the student remains at a reduced risk level and is not demonstrating additional concerning behaviors.

The National Association for Behavioral Intervention and Threat Assessment (NABITA) standards require behavior intervention teams use a written and formalized case review protocol to document the need to keep a case active, engage in case monitoring, or move a case to closed status.

> **Notable Practice**
>
> The College Liaison Program assigns Student Outreach and Support (SOS) case managers to specific colleges and schools. If there are significant incidents or if additional outreach is needed, the assigned case manager has specialized knowledge of the area and is a direct contact for the college/school. Since its inception, information sharing and outreach between the colleges and SOS has improved, and case managers are better able to provide appropriate and up-to-date information to students.

**Recommendation:** The Dean of Students (Dean) should develop and document a process for ongoing monitoring of high-risk students and follow-up with the BAT.

**Management's Corrective Action Plan:** The Office of the Dean of Students will consult with TNG Consulting from December 2024 to April 2025 to determine appropriate changes to the current monitoring process. The Office of the Vice President for Legal Affairs will review final changes to ensure compliance before implementation. The changes will occur during the summer 2025 session and will include training with TNG for the Behavior Assessment Team.

**Responsible Person:** Executive Director of Student Support

**Planned Implementation Date:** September 1, 2025

---

[2] The most serious student cases on campus, rated as "elevated" or "critical" on a standardized scale.

EA_ 26



**OFFICE OF INTERNAL AUDITS REPORT:  BEHAVIORAL ASSESSMENT PROCESSES**

## Observation #2 –BAT Framework and Institutional Charge

UT Austin does not have an official institutional policy or charter defining the BAT's purpose, mission authority, or membership. Additionally, the team does not have documented standard operating procedures, onboarding processes, or member training requirements. The BAT has operated under a Vice President for Student Affairs (VPSA) mandate since its inception, and members have historically been selected by the VPSA to provide expertise and resources from their respective areas. As a result, the team does not have an official institutional charge or authority, documentation about and within the team is limited, and knowledge of processes and procedures is only held by a few individuals.

Although the BAT has generally consistent processes and case management, an official institutional charge, documented procedures, and enhanced training reduces the risk of inconsistency in the provision of care and support of each student of concern. Additionally, NABITA standards emphasize the need for a written institutional policy that establishes and authorizes the team and sets its mission, membership, and scope. Standards also call for a written procedure manual and an annual professional development schedule.

**Recommendation:** The Dean should consult with the Office of the Vice President for Legal Affairs and University (VPLA) leadership to determine the appropriate method of formalizing a BAT framework (e.g., policy, charter, etc.). Additionally, the Dean should develop and document standard operating procedures and outline committee member onboarding and professional development requirements.

**Management's Corrective Action Plan:** The Office of the Dean of Students will discuss if a charter or policy is most appropriate for the Behavior Assessment Team in spring 2025. Once the decision has been determined, the Office of the Dean of Students will work with TNG Consulting to finalize the appropriate response. The final documents (i.e., policy/charter and standard operating procedures) will be reviewed by VPLA and once vetted, will be shared with the Behavior Assessment Team for the beginning of the 2025-2026 academic school year.

**Responsible Person:** Executive Director of Student Support

**Planned Implementation Date:** September 1, 2025

## Observation #3 Sustained Support for Returning Students

UT Austin does not have a process to inform BAT team members or SOS case managers when high-risk students who have withdrawn from the University for medical reasons are re-enrolled. The Office of the Registrar does not track students' reasons for withdrawing, so there is no mechanism to alert SOS or the BAT when students return to campus. Because of the lack of process, case managers cannot follow up with these students or provide sustained support.[3]

---

[3] In academic year 2023-24, there were 126 medical withdrawals, of which 112 were because of mental health.

3

**EA_ 27**



**OFFICE OF INTERNAL AUDITS REPORT:  BEHAVIORAL ASSESSMENT PROCESSES**

Students who transition back to campus may be subject to further mental health challenges and academic difficulties without sustained support.

Additionally, the Council for the Advancement of Standards (CAS) in Higher Education requires case management services (e.g., SOS) to identify their role in the process for student withdrawals involving medical or extenuating circumstances, as well as returning to campus after a leave of absence.

**Recommendation:** The Dean should work with the Office of the Registrar, University Health Services, and other campus units as needed to develop a process that will identify students who return to campus after a medical withdrawal. Additionally, the Dean, in partnership with the colleges, should develop a process to provide necessary support to these students.

**Management's Corrective Action Plan:** It is vital to assess and determine what current operations occur for students medically withdrawing by departments/colleges. Healthyhorns, Disability and Access, and the academic colleges oversee medical withdrawals, which accounts for the 126 medical withdrawals during the 2023-2024 academic year. During the first half of each semester, students can withdrawal from their academic college without notating any reason. Currently, those students have different processes, support and resources based on their individual academic college and the Registrar. During the 2025-2026 school year, the Office of the Dean of Students will partner with these campus areas to review the current process and determine if including the Office of the Dean of Students is appropriate in this process for students. Benchmarking of sister institutions will also occur during the 2025-2026 school year. Once the information has been reviewed and assessed by the key partners, an implementation plan will be developed for the 2026-2027 academic year. This review may determine that the Office of the Dean of Students is not the appropriate department for this work due to potential duplication of services.

**Responsible Person:** Executive Director of Student Support

**Planned Implementation Date:** September 1, 2026

### Observation #4 FERPA Training

The Office of the Dean of Students does not require BAT team members to take Family Educational Rights and Privacy (FERPA) training and does not have a process to ensure administrative staff receive the training. We identified multiple BAT members and Dean administrative staff who had not completed FERPA training. The University of Texas System Policy 183, *Maintenance of Education Records Subject to FERPA*, requires UT Austin faculty and staff to take a FERPA training course if their role requires access to student records. However, if an employee does not directly access systems containing student records, UT Ausitn does not automatically assign this training. Although Dean administrative staff, as well as some BAT members do not access systems containing student records, sensitive student information (i.e., student records) is collected by the Dean and discussed at BAT meetings. Failure to adhere

4



**OFFICE OF INTERNAL AUDITS REPORT:  BEHAVIORAL ASSESSMENT PROCESSES**

to FERPA can result in inadvertent disclosure of student records and/or legal and financial repercussions for the University.

**Recommendation:** The Dean should require all administrative staff be assigned the FERPA training course; additionally, require and confirm FERPA training for BAT members.

**Management's Corrective Action Plan:** The Office of the Dean of Students will implement a standard operating procedure to ensure all professional and student staff complete FERPA training in line with the compliance recommendations. The Behavior Assessment Team will be required to take FERPA training by August 1, 2025, and will be required to maintain compliance. This will be noted in the new charter/policy that is referenced in observation two.

**Responsible Person:** Associate Vice President for Student Affairs and Dean of Students, and Executive Director of Student Support

**Planned Implementation Date:** August 1, 2025

## Additional Risk Considerations

**Team Consolidation**
In addition to the BAT, UT Austin has a behavior assessment team for faculty, staff, and others (Behavior Risk Assessment Committee, or BRAC). Some members of BAT also serve on the BRAC, and there is overlap when students also serve as employees or when issues arise between employees and students. The Dean should consider combining the teams to standardize the University's behavioral assessment processes and improve operational efficiencies. NABITA standards call for one integrated team that addresses early intervention cases as well as threat assessment cases.

## Conclusion

Overall, student behavioral assessment processes promote timely and effective interventions and generally conform to national standards for case management. However, there are opportunities to enhance internal processes related to case monitoring and continued support for students returning to the University after a medical withdrawal. Additionally, there is an opportunity to formalize the BAT's framework and institutional charge.

**Table: Controls Assessment**

| Audit Objective | Controls Assessment |
|---|---|
| Determine whether the University's behavioral assessment processes promote timely and effective interventions and necessary ongoing monitoring. | Generally effective with high and medium-risk opportunities |

5

# EA_ 29



**OFFICE OF INTERNAL AUDITS REPORT:  BEHAVIORAL ASSESSMENT PROCESSES**

## Background

Since 2009, UT Austin's threat assessment team has evolved in structure and scope based on research and best practices, and the team strives to comply with national standards. Currently, the BAT functions as a trained, interdisciplinary resource team that meets weekly to discuss students exhibiting distressing behaviors. Team members collaborate to assess the behaviors of students who pose a risk of harm to themselves or the university community, providing appropriate resources and interventions to deescalate situations and reduce the risk of harm.

SOS manages student cases discussed by the BAT and operates the reporting tool (Behavior Concerns and Advice Line (BCAL)). Additionally, SOS handles lower-risk behavioral concerns by offering outreach, interventions, support, and referrals to campus and community resources. The director of SOS and the executive director of student support co-chair the BAT.

## Scope, Objectives, and Methodology

This audit was conducted in conformance with The Institute of Internal Auditors' *International Standards for the Professional Practice of Internal Auditing*. Additionally, we conducted the audit in accordance with Generally Accepted Government Auditing Standards and meet the independence requirements for internal auditors. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions on our audit objectives.

The scope of this review included the behavioral assessment processes for students during academic year 2023-2024.

Specific audit objectives and the methodology to achieve the objectives are outlined in the table below.

**Table: Objectives and Methodology**

| Audit Objective | Methodology |
|---|---|
| Determine whether the University's behavioral assessment processes promote timely and effective interventions and necessary ongoing monitoring. | <ul><li>Interviewed key personnel and conducted process walk-throughs.</li><li>Attended BAT meetings and reviewed documentation to understand policies and procedures.</li><li>Identified behavioral assessment tools and training and verified that the training was appropriate and complete.</li><li>Tested a sample of SOS and BAT cases to verify that case management</li></ul> |

6

EA_ 30



OFFICE OF INTERNAL AUDITS REPORT:  BEHAVIORAL ASSESSMENT PROCESSES

|  | followed best practices and documented procedures.<br>• Conducted a gap analysis of current SOS and BAT processes against national standards.<br>• Researched peer processes to identify key common characteristics and best practices. |
| --- | --- |

## Criteria

- UT Austin Student Emergency Services Manual
- Council for the Advancement of Standards in Higher Education (CAS) for Case Management Services, Part 2, *Program and Services*
- National Association for Behavioral Intervention and Threat Assessment (NABITA) Standards for Case Management, Part 2, *Process Elements*
- NABITA Industry Standards for Behavior Intervention Teams

## Observation Risk Ranking

Audit observations are ranked according to the following definitions, consistent with UT System Audit Office guidance.

| Risk Level | Definition |
| --- | --- |
| Priority | If not addressed immediately, has a high probability to directly impact achievement of a strategic or important operational objective of The University of Texas at Austin (UT Austin) or the UT System as a whole. |
| High | Considered to have a medium to high probability of adverse effects to UT Austin either as a whole or to a significant college/school/unit level. |
| Medium | Considered to have a low to medium probability of adverse effects to UT Austin either as a whole or to a college/school/unit level. |
| Low | Considered to have minimal probability of adverse effects to UT Austin either as a whole or to a college/school/unit level. |

In accordance with directives from UT System Board of Regents, Internal Audits will perform follow-up procedures to confirm that audit recommendations have been implemented.

EA_ 31



OFFICE OF INTERNAL AUDITS REPORT:  BEHAVIORAL ASSESSMENT PROCESSES

## Report Submission

We appreciate the courtesy and cooperation extended throughout the audit.

Respectfully Submitted,

Sandy Jansen, CIA, CCSA, CRMA, Chief Audit Executive

## Distribution

Dr. Jay C. Hartzell, President
Ms. Amanda Cochran-McCall, Vice President for Legal Affairs and General Counsel
Mr. Thomas Dison, Interim Vice President for Student Affairs
Mr. Jeff Graves, Chief Compliance Officer and Privacy Officer
Ms. Tessa Green, Chief of Staff, Office of the Vice President and Provost
Ms. Katie McGee, Associate Vice President for Student Affairs and Dean of Students
Dr. Rachel Davis Mersey, Executive Vice President and Provost
Ms. Christy Sobey, Director of President's Office Operations
Dr. Kelly Soucy, Executive Director of Student Support, Office of the Dean of Students
The University of Texas at Austin Institutional Audit Committee
The University of Texas System Audit Office
Legislative Budget Board
Governor's Office
State Auditor's Office

EA_ 32

| Chair & Co-Chairs | Department / Area of Representation |
|---|---|
| Kelly Soucy | **Co-Chair of the Behavior Assessment Team**<br>Executive Director of Student Support<br>Office of the Dean of Students |
| Patrick Joseph Jr. | **Co-Chair of the Behavior Assessment Team**<br>Senior Associate Director of Student Emergency Services |
| Melissa Jones-Wommack | Student Conduct and Academic Executive Director of Student Conduct and Academic Integrity |
| Kelli Bradley | Disability and Access: Executive Director |
| Robert Leary | Title IX Office: Deputy Title IX Coordinator for Support and Resources |
| John Tesauro | UT Police Department: Detective |
| Karen Olson | UT Police Department: Task Force Officer |
| Chris Hutto | Assistant Vice President for Legal Affairs |
| Kelli Bradley | Disability and Access: Executive Director |
| Richard Hogeda | Assistant Dean for Student Affairs: College of Education Student Division |
| Margaret Luevano | Texas Global: Director, International Student and Scholar Services |
| Jenny Brydon | Texas Global: Associate Director, International Student and Scholar Services |
| Dr. James (Jim) Cox | Graduate Student Services: Associate Dean of Graduate Studies |
| Susan Harnden | HealthPoint/Employee Assistance Program: Director |
| Justin Jasko | University Housing & Dining: Director, Senior Director for Residential Experience and Housing Operations |

EA_ 33

| BRAC MEMBER | OFFICE |
|---|---|
| Amber Hunter-Crawford | Employee Assistance Program |
| Angela Frisina | Human Resources |
| Anthony Torns | University Police Department |
| Andrea Ortega | Faculty Affairs |
| Christopher J. Hutto | Vice President for Legal Affairs |
| Erin Brown | Counseling and Mental Health Center |
| Hillary Brown | University Risk and Compliance |
| Huitzi Valdez | University Police Department |
| Janet Dukerich | Faculty Affairs |
| Janie Perez | Vice President for Legal Affairs |
| Jeffrey Graves | University Risk and Compliance |
| John Tesauro | University Police Department |
| Karen Chawner | Human Resources |
| Karen Olson | University Police Department |
| Kelly Soucy | Vice President for Student Affairs |
| Kurt Thomas | University Police Department |
| Laura Gomez-Horton | Employee Assistance Program |
| Laura O'Brien | Vice President for Legal Affairs |
| Lisa Bennett | Vice President for Legal Affairs |
| Robert Leary | University Risk and Compliance |
| Roxy Becker | Human Resources |
| Whitney Campbell | University Risk and Compliance |

EA_ 34

| | |
|---|---|
| amber.huntercrawford@austin.utexas.edu | |
| angela.frisina@austin.utexas.edu | |
| anthony.torns@austin.utexas.edu | |
| aortega@austin.utexas.edu | |
| chris.hutto@austin.utexas.edu | |
| erin.brown@austin.utexas.edu | |
| hillary.brown@austin.utexas.edu | |
| huitzi.valdez@austin.utexas.edu | |
| janet.dukerich@austin.utexas.edu | |
| janie.perez@austin.utexas.edu | |
| jgraves@austin.utexas.edu | |
| jgraves@utexas.edu | |
| john.tesauro@austin.utexas.edu | |
| karen.chawner@austin.utexas.edu | |
| karen.olson@austin.utexas.edu | |
| kelly.rifenbark@austin.utexas.edu | |
| kurt.thomas@austin.utexas.edu | |
| laura.gomezhorton@austin.utexas.edu | |
| laura.obrien@austin.utexas.edu | |
| lisa.bennett@austin.utexas.edu | |
| robert@austin.utexas.edu | |
| roxybecker@austin.utexas.edu | |
| utpd-brac@austin.utexas.edu | **bouncing** |
| whitney@austin.utexas.edu | |

EA_ 35

 **Gmail**                                    Jennifer Brantley ✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕

## [Records Center] Public Information Request :: R010958-121025
3 messages

**UT Austin Open Records** <utexas@mycusthelp.net>                Mon, Jan 5, 2026 at 11:20 AM
To: ✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕

--- Please respond above this line ---



RE: PUBLIC RECORDS REQUEST Reference # R010958-121025

Dear Jennifer Brantley,

The University of Texas at Austin received a public information request from you which provides as follows:

> **Jennifer Brantley (jfb2547) is requesting information about the speaking engagement by Dr. Wolford on November 11, 2025 (where it was). She is also looking for any communications with Soucy and the BRAC, and the names of the BRAC members, as well as all communications between them concerning me, whether acting in official capacities as part of the BRAC or not.**
>
> **Also, Soucy mentions emailing "Jeff" as someone to "help" in an email sent at 7:57:57 PM on 10/27/2025.**
> **I've been through the UT Directory and narrowed this down, but these emails should have been responsive to my previous request.**
>
> **Since Soucy was communicating about me with "Jeff" and the BRAC, those communications should have been included with R010642-110725.**

I hope you had a fun and restful Winter Break! We have located some information that is responsive to this request, but consider other aspects of it to be unclear and overly broad. First, here's what we were able to locate:

1. We have confirmed that there is no documentation listing the names of BRAC members, but we were able to identify the individuals who receive emails that are sent to the BRAC email list, and that information has been uploaded to the Portal.
2. We have also uploaded to the Portal a flyer regarding the November 11, 2025, speaking engagement.
3. We have confirmed that the "Jeff" being referenced was Jeffrey Graves, who is UT Austin's Chief Compliance Officer and leads University Risk and Compliance Services.
4. We have confirmed that there was an email chain involving Soucy and Graves that fell within the timeframe specified by ORR no. 10642 and thus should have been provided to my office in response to that request. I apologize for that error. We have now located and reviewed those emails, and I can confirm that each email included a University attorney and was sent for the purpose of facilitating the rendition of legal advice or services, and therefore is subject to the attorney-client privilege. As such, we don't have any additional information to provide in response to that request.

Please login to the Public Information Portal at the following link to retrieve the appropriate responsive documents.

Public Information Request - R010958-121025

Next, we consider the remaining part of your request, which seeks all communications that BRAC members maintain regarding yourself, to be overly broad. Section 552.222 of the Texas Public Information Act permits a governmental body to ask a requestor to clarify or narrow a request for information if the request is unclear or if a large amount of information has been requested. In this case, we asked ITS to search all of the email accounts listed in the attached BRAC members document, and they told us that there were 3,892 emails in those accounts that included the keyword "Brantley". Obviously that search wouldn't include each and every responsive communication, so each BRAC member would still have to search for non-email communications as well as as emails that didn't include your full surname. But assuming the response was limited to those emails alone, our initial estimates of the cost to proceed are over $2,000. As such, we ask that you significantly narrow that remaining part of your request. If you do not wish to narrow your request, let us know so that we can get you a formal estimation of the cost to proceed. Please note that, in accordance with section 552.222 of the Texas Government Code, your request will be considered withdrawn if you do not respond to this request for narrowing and clarification in writing within 61 days from the date of this message.

Thank you!

Sincerely,


Bob Bonner-Davis
Chief Public Information Coordinator
Office of the Vice President for Legal Affairs

---

To monitor the progress or update this request please log into the Public Information Portal



Powered by
GovQA

---

**Jennifer Brantley** ▨▨▨▨▨▨▨▨▨▨▨▨                                    Mon, Jan 5, 2026 at 11:35 AM
To: UT Austin Open Records <utexas@mycusthelp.net>

Mr. Bonner-Davis,

On the speaking event, it doesn't list any speakers. I do not see it advertised on any campus calendar.
Is there any other evidence that this speaking event even existed?

The flyer doesn't look familiar at all and was not hanging up in Batts that I saw. I did spend some time in the building when having to work on my thesis and present my research.

Who else knew about the event?

Best,



**Jennifer Ferrell Brantley**

CMA (AAMA), NASM-CPT, CES, CNC, MNTS, LMT, LE, BLS, CBS

Government Major
History & Holocaust and Genocide Studies Minors
Social Inequality, Health, and Policy (Public Health Pathway) BDP
Gilman Scholar Alumni, U.S. Dept. of State
College of Liberal Arts, The University of Texas at Austin

▨▨▨▨▨▨▨▨▨▨▨

in ⬤

Member of the American Association of Medical Assistants | Texas Society of Medical Assistants | The National WWII Museum | Dallas Holocaust and Human Rights Museum | LBJ Presidential Library and Museum | Texas Exes | Longhorn Foundation | Texas Public Health | New Wave Longhorns | Phi Beta Kappa | Phi Kappa Phi | Pi Sigma Alpha | Tau Sigma | Phi Sigma Pi | Omicron Delta Kappa | Phi Theta Kappa | Psi Beta | Sigma Kappa Delta | Chi Alpha Theta | Sigma Alpha



EA 37

Lambda I The National Society of Collegiate Scholars I The National Society of Leadership and Success I Dallas College Alumni Network I Dallas College Honors Scholar I Dallas College Honors Student Organization

[Quoted text hidden]

---

**Jennifer Brantley** ▨▨▨▨▨▨▨▨▨▨▨▨▨▨                                        Mon, Jan 5, 2026 at 1:00 PM
To: UT Austin Open Records <utexas@mycusthelp.net>

Oh, sorry, Mr. Bonner-Davis!

I totally didn't even see the second part you sent.

So, I'm not the only Brantley to have attended UT.
I don't even think I'm the only Jennifer Brantley to have attended UT.

I guess the emails would need to include some combination of my name and EID, Wolford, SCAI, no contact or contact, lawsuit, complaint, safety, plan, threat, retaliation, trust, disability, disabilities, discrimination, honors, graduation, study abroad, scholarship...

Those are the top keywords that come to mind right now.

Only one copy of identical emails/threads across custodians (by message-id and/or identical content). I do not need the same email reproduced from multiple accounts.

Thanks!



**Jennifer Ferrell Brantley**
CMA (AAMA), NASM-CPT, CES, CNC, MNTS, LMT, LE, BLS, CBS

Government Major
History & Holocaust and Genocide Studies Minors
Social Inequality, Health, and Policy (Public Health Pathway) BDP
Gilman Scholar Alumni, U.S. Dept. of State
College of Liberal Arts, The University of Texas at Austin

▨▨▨▨▨▨▨▨▨▨

 

Member of the American Association of Medical Assistants I Texas Society of Medical Assistants I The National WWII Museum I Dallas Holocaust and Human Rights Museum I LBJ Presidential Library and Museum I Texas Exes I Longhorn Foundation I Texas Public Health I New Wave Longhorns I Phi Beta Kappa I Phi Kappa Phi I Pi Sigma Alpha I Tau Sigma I Phi Sigma Pi I Omicron Delta Kappa I Phi Theta Kappa I Psi Beta I Sigma Kappa Delta I Mu Alpha Theta I Sigma Alpha Lambda I The National Society of Collegiate Scholars I The National Society of Leadership and Success I Dallas College Alumni Network I Dallas College Honors Scholar I Dallas College Honors Student Organization

On Mon, Jan 5, 2026 at 11:20AM UT Austin Open Records <utexas@mycusthelp.net> wrote:
[Quoted text hidden]

EA  38



**From:**
**Sent:** Tuesday, November 5, 2024 6:40 PM
**To:** Scott Wolford
**Subject:** Exam 2 on Canvas

Hi Scott,

Exam 2 grades are on Canvas. I =on't have [REDACTED]. Not counting her as zero (and excluding Test Studen=), the grade average is 84.00, which is a lot higher than Exam 1. This is =ncouraging because my grading did not change (I'd say it might have been s=ightly stricter b/c I didn't have keys suggesting full credit for incomple=e answers like last time).

Jennifer Brantley comp=ains (right on the exam sheet) that your questions are poorly worded but I=don't feel that way from how others have answered.

Many students figured that I am not taking points off for long answers (a=d we are thus getting a lot of long answers). If you do choose to hold Exa= 3 online, we can actually enforce this rule (but tbh this is hard to enfo=ce with paper exams especially because you never know what is a comma and =hat is a period...).

=est regards,

PhD Student
The University of Texas at Austin <=ont color="#000000">| Department of Government
=div>

EA_ 39



**From:** Scott Wolford <swolford@austin.utexas.edu>
**Sent:** Wednesday, November 6, 2024 9:11 AM
**To:**
**Subject:** Re: Exam 2 on Canvas

Thanks for all the work. =f we don't hear from [redacted] by the end of the week, I'll =mail her to see what's going on.

And =hat's not unexpected from Brantley. I know she was frustrated =ith it, but I don't think it's down to the wording, =ither.

SW

----------------

Scott =olford
Professor of Government
Co-Director, Correlates =f War Project
University of Texas at Austin
http://www.scott-wolford.com/Textbook: The Politics of the First =orld War
Book: The Politics of Military =oalitions
=/div>

> On Nov 5, 2024, at 6:40 PM= [redacted] wrote:

Hi =cott,

Exam 2 grades are on Canvas. I don't have [redacted]. Not counting her as zero (and excluding Test Student), the =rade average is 84.00, which is a lot higher than Exam 1. This is =ncouraging because my grading did not change I'd say it might have =een

EA_ 40

 **Gmail**                                                Jennifer Brantley ◇◇◇◇◇◇◇◇◇◇◇◇◇

## University of Texas- Austin 06-24-2388 20 Day Letter to Complainant

1 message

**Fiagome, Selim** <Selim.Fiagome@ed.gov>                                  Fri, Jan 3, 2025 at 9:51 AM
To: ◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

Dear Jennifer Brantley:

OCR has determined that it needs additional information regarding your complaint. Please provide a response to the following questions:

1. What are you alleging is the discriminatory act based on age?

2. When did the age discrimination occur (e.g., dates)?

3. What are you alleging is the discriminatory act based on disability?

4. When did the disability discrimination occur (e.g., dates)?

5. Who discriminated against you (e.g., name(s) of the individual(s) involved)?

6. How is the University's alleged discriminatory action related to your disability?

7. How is the University's alleged discriminatory action related to your age?

Please provide a response within 20 calendar days of this email Thursday, January 23, 2025. If you submit information before the 20th day, unless otherwise noted, we will assume you are providing a complete response to the information requested. If OCR does not receive a response by the requested date, OCR will evaluate your allegations based on the available information which may result in the dismissal of your allegations. Please note that OCR will only take action with respect to allegations that have been filed within 180 calendar days of the alleged discrimination unless OCR grants a waiver. If you would like to request a waiver for any untimely claims, please provide the reason for why you were unable to file within the timely period.

If you have any questions, please contact me at (214) 661-9620, or by e-mail at Selim.Fiagome@ed.gov.

Truly,

Selim Fiagome

Pronouns: He/Him/His

Civil Rights Attorney

U.S. Department of Education

Office for Civil Rights

EA 41

Renaissance Tower

1201 Elm Street, Suite 1000

Dallas, Texas 75270

Telephone:  214-661-9620

Fax: 214-661-9587

selim.fiagome@ed.gov


Selim Fiagome

Pronouns: He/Him/His

Civil Rights Attorney

U.S. Department of Education

Office for Civil Rights

Renaissance Tower

1201 Elm Street, Suite 1000

Dallas, Texas 75270

Telephone:  214-661-9620

Fax: 214-661-9587

selim.fiagome@ed.gov



CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.



Jennifer Ferrell Brantley ✕✕✕✕✕✕✕✕✕✕

## (no subject)
1 message

**Jennifer Ferrell Brantley** ✕✕✕✕✕✕✕✕✕✕                           Fri, Jan 3, 2025 at 10:24 AM
To: Scott Wolford <swolford@austin.utexas.edu>

Oops. I forgot that I'd filed a complaint against UT with the Department of Education Office of Civil Rights.

This happened before the semester began.

I was too busy wrapping up summer classes, frantically trying to change my major and minor, attempting to email all my fall professors to ask whether my disabilities would be a problem for me in their classes.

Some of it had to do with the cap on work study hours.
The university removed a website I found that said I could get approval from the Dean of my college to work more, but that site was taken down after I pointed it out to the advisors.

I thought that was pretty shady. And I was gaslit a bit.

I had no luck with the Ombudsman.
So, I went to the DoE, OoCR.

When I was contacted by the attorney, I just didn't have time, but I made sure to call back and explain that I was too busy. I didn't want them wasting their time trying to call me back and call me back when I was too overwhelmed.

I said I'd call them back when I could and then forgot.

Well, I received an email today asking for more information, because they were going to make a decision based on what information they had by 1/21.

I wonder if they got that strongly worded email I sent to Hartzell's office after my request for deferment was denied?

The request made because I needed further testing, and now that I'm having trouble I'm being told to have more testing.

I wonder if this is why my D&A coordinator has totally stopped communicating with me…

The fall was terrible for me.
You know, you were there. You had a front row seat for some of my meltdowns.
So, it makes sense I'd forget. I forgot everything else (pretty much), after all.

It took me nearly 30 minutes to remember why I even sent the complaint to the DoE in the first place.
The questions didn't even make sense to me for a bit.

**The University of Texas at Austin**
**Behavior Concerns Advice Line (BCAL)**
*Submitted on January 12, 2025 at 2:26:54 pm CST*

Nature                        **BCAL**
Urgency                       **BCAL**
Incident Date and Time        **2025-01-12**
Incident Location             **Online**

Reported by
Name:        **Scott Wolford**
Title:       **Department of Government**
Email:       **swolford@austin.utexas.edu**
Phone        ▨▨▨▨▨▨▨
Address:

Involved Person of Concern and Witnesses

Questions
Please describe the situation with as much information as possible (i.e. nature of the situation, frequency of behaviors, examples of behaviors, observations, quotes, etc).
**I had this student in an undergraduate class in Fall 2024, and they were a lot to deal with. Lots of emails, many of them rambling and often personal, some accusations of bias in favor of other students, insinuations that there was something wrong with the class because the student got a worse grade in this than others, etc. But mostly just long-winded details about the student's life. The student said the emails would stop after the semester did, but they haven't. For my part, I stopped responding once grades were submitted, but most days, I'll get 3-4 emails. (Only one today, though.) It's like the student has assigned me the role of friend or confidant, though I certainly didn't sign up for either. (The student, who I believe is a year or two older than me, did tell me once in my office that I remind her of her late brother. I thought it was odd at the time, but it didn't register as more than that until the flood of emails.) Said emails are a mix of musings that read like diary entries, descriptions of mental disabilities and attempts at self-diagnosis, childhood pictures, stories about past trauma, and all manner of things that simply aren't my business; other emails are more pedestrian, talking through decisions over majors and honors thesis advisors, but still peppered with endless discussions of disability accommodations and symptoms of cognitive issues. I'm certainly not qualified to respond to lots of this stuff, though I get the sense that my willingness to respond is immaterial, since the student keeps emailing me. I don't have the sense that it's malicious-though there was an image of Facebook having recommended an uncle of mine as a friend to this person, which freaked me out-but the content is, again, none of my business, and the sheer volume worries me. It seems like a clear overstepping of student-instructor boundaries, and if these are signals of a need for help, I'm definitely not qualified to provide it.**

**I've kept the emails, apart from one containing a psychiatric report that the student requested I delete, but over the break I've just been either marking them as "read" or skimming to make sure there are no immediately obvious threats or signs of self-harm.**

**My plan is to respond by saying that I don't think I'm the appropriate recipient of emails of this nature, especially since a new semester is beginning and they'll have a whole new crop of instructors, but I'm worried about the student's response.**

I understand that this form will be received during normal business hours (M-F, 8AM - 5 PM). Forms submitted after hours will not be addressed until the following business day. For 24/7 support, please call BCAL at (512) 232-5050. **Yes, I understand.**

*Pending IR #00019660*

# EA_ 44

Submitted from 104.28.50.145. Processed by routing rule #3. Routed to Patrick Joseph Jr., Associate Director of Student Outreach and Support.
Copies to: patrick.joseph@austin.utexas.edu,kelly.rifenbark@austin.utexas.edu,mwommack@austin.utexas.edu,brittany.williamson@austin.utexas.edu,anna.corbett@austin.utexas.edu,natalie.campbell@austin.utexas.edu

Thanks.

Can I ask what the timeline looks like from this point? I don't expect the student to respond well, given her response to my previous requests for her to stop emailing me, and I'd like to have some sense of what to expect and when. She's still emailing me (lengthy updates about what happened today, for example), and I'm still not responding, but I could use some guidance—even if it's just to continue not responding.

sw

....................

Scott Wolford
Professor of Government
Co-Director, Correlates of War Project
University of Texas at Austin
http://www.scott-wolford.com/
Textbook: The Politics of the First World War
Book: The Politics of Military Coalitions

> On Mar 31, 2025, at 9:13 PM, Wommack, Melissa <mwommack@austin.utexas.edu> wrote:
>
> Hello Dr. Wolford,
>
> I have reviewed your report, and see that SOS has been involved as well in an effort to disrupt the students behavior. At this time, we will move this student through the conduct process for failure to comply and disruptive behavior. Assistant Director Brianna Dobson will be assigned this case and you should receive outreach from her soon.
>
> Sincerely,
> Melissa
>
> MELISSA JONES-WOMMACK, M.A. (she/her), Executive Director – Student Conduct and Academic Integrity
> The University of Texas at Austin | Office of the Dean of Students | 512-471-2841 |
> deanofstudents.utexas.edu
>
> While it suits me to email after business hours, I do not expect you to respond outside of your own working hours.

EA_ 46

Page 1

From: "Scott Wolford" <swolford@austin.utexas.edu>

To: "Dan M Brinks" <danbrinks@austin.utexas.edu>

Date: 4/1/2025 6:06:31 AM

Subject: Update on student I reported to BCAL

The student I initially reported to BCAL back in January never stopped emailing me despite many attempts to get her to stop. She's now been referred to Student Conduct, and they're putting her through the process for failure to comply and disruptive behavior. I'm not sure if I should share the name at this point, but once I hear back from my contact on the matter, I'll confirm what details I should share with you.

SW

---------------------

Scott Wolford
Professor of Government
Co-Director, Correlates of War Project
University of Texas at Austin
http://www.scott-wolford.com/
Textbook: The Politics of the First World War
Book: The Politics of Military Coalitions

EA_ 47

From: "Scott Wolford" <swolford@austin.utexas.edu>
To: "Dan M Brinks" <danbrinks@austin.utexas.edu>
Date: 4/16/2025 6:20:24 AM
Subject: Re: Your student

That's her, yes. She was served a charge letter from SCAI almost weeks ago and told she was no longer permitted to contact me. She's complied with that request so far, but I've not gotten an update from SCAI since the notification that they sent the letter. And my contact has been Patrick Joseph at BCAL and Brianna Dobson at SCAI.

sw

--------------------

Scott Wolford
Professor of Government
Co-Director, Correlates of War Project
University of Texas at Austin
http://www.scott-wolford.com/
Textbook: The Politics of the First World War
Book: The Politics of Military Coalitions

> On Apr 16, 2025, at 6:17 AM, Brinks, Daniel M <danbrinks@austin.utexas.edu> wrote:
>
> Hi Scott. The student you've been having trouble with reached out to me again. It's Jennifer Brantley, right? I just wanted to make sure it's the same student. Do you have the name of the person you've been dealing with at the Dean of Students, so I can check in with them?
> Thanks,
> Dan
>
> DANIEL M. BRINKS
> H. Malcolm MacDonald Chair in Comparative and Constitutional Law

EA_ 48

From:   "Scott Wolford" <swolford@austin.utexas.edu>
To:     "Dobson, Brianna" <brianna.dobson@austin.utexas.edu>
CC:     "Wommack, Melissa" <mwommack@austin.utexas.edu>
        "Campbell, Natalie" <natalie.campbell@austin.utexas.edu>
        "Joseph Jr., Patrick" <patrick.joseph@austin.utexas.edu>
Date:   4/3/2025 10:14:48 AM
Subject: Re: [Maxient] IR #00023081 Behavioral Incident - College of Liberal Arts/Government -
         03/31/2025 8:30 AM

Thanks. I do have some questions:

1. Will the student be told not to contact me in the referral letter?
2. And do you mean emails sent after she receives the referral letter, or emails since my last request for
her to stop?

I won't be on campus Friday, but I am curious what to do if the student shows up to my office next week. I
have no idea what to expect here, and to be honest I'm jumpy now.

Thanks,
SW

------------------
Scott Wolford
Professor of Government
Co-Director, Correlates of War Project
University of Texas at Austin
http://www.scott-wolford.com/
Textbook: The Politics of the First World War
Book: The Politics of Military Coalitions

On Apr 3, 2025, at 10:10 AM, Dobson, Brianna <brianna.dobson@austin.utexas.edu> wrote:

Hello,

I just sent Dr. Wolford an email explaining that I am processing the case and provided information on the

Page 1

From: "Raymond Abarca" <Raymond.Abarca@oag.texas.gov>

To: "Soto, Esteban <esteban.soto@austin.utexas.edu>" <esteban.soto@austin.utexas.edu>
awelter@utsystem.edu
"Stephen DeVinney" <Stephen.DeVinney@oag.texas.gov>

CC: "Obrien PLS CP, Laura M <laura.obrien@austin.utexas.edu>" <laura.obrien@austin.utexas.edu
gvonpaumgartten@utsystem.edu
"Raymond Abarca" <Raymond.Abarca@oag.texas.gov>

Date: 4/23/2025 11:34:59 AM

Subject: Jennifer Brantley v. UT Austin; Hearing discussion

Purpose: Hearing discussion; Jennifer Brantley v. UT Austin

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 252 754 150 607 6

Passcode: DM3TY9ue

**Dial in by phone**

+1 737-253-8394,,17275530# United States, Georgetown

Find a local number

Phone conference ID: 172 755 30#

For organizers: Meeting options | Reset dial-in PIN

EA 50
12/17/2025

From: "Stephen DeVinney" <Stephen.DeVinney@oag.texas.gov>

To: awelter@utsystem.edu

esteban.soto@austin.utexas.edu

CC: gvonpaumgartten@utsystem.edu

laura.obrien@austin.utexas.edu

Date: 4/28/2025 1:24:47 PM

Subject: Jennifer Brantley v. University of Texas at Austin- next steps

# Microsoft Teams  Need help?

## Join the meeting now

Meeting ID: 223 474 011 365

Passcode: XE9s2NX3

**Dial in by phone**

+1 737-253-8394,,144917418#  United States, Georgetown

Find a local number

Phone conference ID: 144 917 418#

For organizers: Meeting options | Reset dial-in PIN



● Busy    🔔 None    🏷 Categorize    🔒 Mark as Private    ↩ Reply    ↗ Forward    ⇄ Options    ⋯

🕭 This appointment occurs in the past.

ⓘ The organizer has not requested a response for this meeting.

99  **jft**  ⬦⬦                                                                   ☀ ⌃

🕐  Monday, May 19, 2025 from 1:00 PM to 1:30 PM

◎  [ Join ]  https://utexas.zoom.us/j/97064467833?from=addon

**Meeting Details**

**zoom**

Hi there,

Patrick Joseph is inviting you to a scheduled Zoom meeting.

## Join Zoom Meeting

One tap mobile:    US: +13052241968,,97064467833# or +13126266799,,97064467833#
Meeting URL:       https://utexas.zoom.us/j/97064467833?from=addon
Meeting ID:        970 6446 7833

### Join by Telephone

For higher quality, dial a number based on your current location.
Dial:    +1 305 224 1968 US
         +1 312 626 6799 US (Chicago)



**Invitees**

Organizer

Joseph Jr., Patrick
Required

All Invited
You have not requested responses for this event.

Dobson, Brianna
Optional

HC   Hutto, Christopher J
Required

Johnson, Christie
Required

Macias, Jessika
Required

KB   Bradley, Kelli
Required

Wommack, Melissa
Required

LR   Leary, Robert F
Required

Ward, Thomas B
Required

MS   Scroggins, MarloJo
Optional

---

⏺ This appointment occurs in the past.

ⓘ The organizer has not requested a response for this meeting.

99   jfb:   [Urgent] ☀ ︿

🕐 Tuesday, May 20, 2025 from 11:00 AM to 11:30 AM

📅 You have not responded   **RSVP**

◎ [Join]   https://utexas.zoom.us/j/97825269395?from=addon

**Meeting Details**      ♡ Meeting Insights (6)

Hello All,

I've seen this student's name pop up across several of our areas over the past few days. Based on what she has shared in her outreach to some offices and the fact that she is currently abroad I'd like to meet to review the concerns we have noticed and discuss the best ways to support the student as we move forward.

If you are unable to attend, please send representation from your office.

Thank you

**zoom**



**Invitees**

Organizer

Joseph Jr., Patrick
Required

All Invited
You have not requested responses for this event.

This appointment occurs in the past.

The organizer has not requested a response for this meeting.

99 **Jennifer/Patrick**   Student Meeting

Tuesday, May 27, 2025 from 9:15 AM to 10:00 AM

You have not responded    RSVP

Join    https://utexas.zoom.us/j/92914395728?from=addon

**Meeting Details**

zoom

Hi there,

Patrick Joseph is inviting you to a scheduled Zoom meeting.

**Join Zoom Meeting**

One tap mobile:    US: +13052241968,,92914395728# or +13126266799,,92914395728#



EA_ 55

Case 1:26-cv-00311-ADA-DH    Document 1-2    Filed 02/09/26    Page 56 of 101

🔊 This appointment occurs in the past.

ⓘ The organizer has not requested a response for this meeting.

99 **Emergency BAT: jfb** ✕     [Urgent] ☀ ⌃

🕐 Tuesday, May 27, 2025 from 9:00 AM to 10:00 AM

📅 You accepted    **Edit RSVP**

◎ [ 👥 Join ] [ 💬 Chat ]   [ Microsoft Teams Meeting ]

**Meeting Details**

---

# Microsoft Teams   [Need help?](#)

## [Join the meeting now](#)

Meeting ID: 276 771 494 744 8

Passcode: Bn693Ms9

**Dial in by phone**

[+1 512-831-7901,,73432057#](#)   United States, Austin

[Find a local number](#)

Phone conference ID: 734 320 57#

For organizers: [Meeting options](#) | [Reset dial-in PIN](#)

---

**Invitees**

Organizer

   Soucy, Kelly L
   Required

All Invited

(B) behavior_concerns@utlists....
   Required

   Johnson, Christie
   Required

(SE) Soto, Esteban
   Required

(DJ) Dalton, John D
   Required

(GJ) Graves, Jeff
   Required

(KB) Bradley, Kelli
   Required

(MS) Scroggins, MarloJo
   Optional

   Macias, Jessika
   Optional

   Joseph Jr., Patrick
   Optional

   Katie McGee
   Optional

(LR) Leary, Robert F
   Optional

(TJ) Tesauro, John A
   Optional

Case 1:26-cv-00311-ADA-DH   Document 1-2   Filed 02/09/26   Page 57 of 101

🔔 This appointment occurs in the past.

99  **jfb**     🔒  (Urgent)  ☀  ⌃

🕐  Wednesday, August 20, 2025 from 3:00 PM to 3:45 PM

📍  [Join]  https://utexas.zoom.us/j/89285572905?from=addon

### Meeting Details

Hello,

We know that several offices in this group have been working with this student. I want us to meet to discuss updates from all areas involved and talk through necessary next steps.

Please send a representative for your area if you're unable to attend.

Thank you

**zoom**

## Invitees

Organizer

 **Joseph Jr., Patrick**
Required

10 Accepted

 **Ortega, Andrea**
Required

 **Valdez, Huitzi**
Required

TA  **Torns, Anthony L**
Required

DJ  **Dukerich, Janet M**
Optional

HC  **Hutto, Christopher J**
Optional

 **Campbell, Whitney**
Optional

TJ  **Tesauro, John A**
Optional

 **Wommack, Melissa**
Optional

 **Soucy, Kelly L**
Optional

KB  **Bradley, Kelli**
Optional

| | |
|---|---|
| **Subject:** | Emergency BAT:  |
| **Location:** | Microsoft Teams Meeting |
| **Organizer:** | Kelly.Rifenbark@austin.utexas.edu |
| **Start time:** | Tuesday, May 27, 2025 at 9:00 AM |
| **End time:** | Tuesday, May 27, 2025 at 10:00 AM |

---

# Microsoft Teams   Need help?

## Join the meeting now

Meeting ID: 276 771 494 744 8

Passcode: Bn693Ms9

**Dial in by phone**

+1 512-831-7901,,73432057#   United States, Austin

Find a local number

Phone conference ID: 734 320 57#

For organizers: Meeting options | Reset dial-in PIN

**TEXAS**
The University of Texas at Austin

For assistance with Teams, please contact the UT Service Desk at (512) 475-9400 or help@utexas.edu.

Org help | Privacy and security

---

EA_ 57

From:    "Joseph Jr., Patrick" <patrick.joseph@austin.utexas.edu>
To:    "Tesauro, John A" <john.tesauro@austin.utexas.edu>
Date:    12/15/2025 8:56:49 AM
Subject:    FW: 10am Tomorrow

FYI.

--
PATRICK JOSEPH JR. (he/him/his), Senior Associate Director of Student Outreach and Support
The University of Texas at Austin | Office of the Dean of Students
512-471-5017 | deanofstudents.utexas.edu/emergency

[ GIVE TO THE DIVISION OF STUDENT AFFAIRS ]

From: Joseph Jr., Patrick <patrick.joseph@austin.utexas.edu>
Date: Wednesday, September 3, 2025 at 1:11 PM
To: Wommack, Melissa <mwommack@austin.utexas.edu>, Campbell, Natalie <natalie.campbell@austin.utexas.edu>, Sunny Pate <sunny.pate@austin.utexas.edu>, Joffrey Niessen <joffrey@austin.utexas.edu>, Soucy, Kelly L <Kelly.Rifenbark@austin.utexas.edu>, Doyle, Jeff <jeffrey.doyle1@austin.utexas.edu>
Cc: Pope, Joanna <jopope@austin.utexas.edu>
Subject: Re: 10am Tomorrow

@Pope, Joanna please add ▓▓▓▓▓▓▓▓▓▓ to the ongoing case section.

--
PATRICK JOSEPH JR. (he/him/his), Senior Associate Director of Student Outreach and Support
The University of Texas at Austin | Office of the Dean of Students
512-471-5017 | deanofstudents.utexas.edu/emergency

[ GIVE TO THE DIVISION OF STUDENT AFFAIRS ]

From: Wommack, Melissa <mwommack@austin.utexas.edu>
Date: Wednesday, September 3, 2025 at 12:09 PM
To: Joseph Jr., Patrick <patrick.joseph@austin.utexas.edu>, Campbell, Natalie <natalie.campbell@austin.utexas.edu>, Sunny Pate <sunny.pate@austin.utexas.edu>, Joffrey Niessen <joffrey@austin.utexas.edu>, Soucy, Kelly L <Kelly.Rifenbark@austin.utexas.edu>, Doyle, Jeff <jeffrey.doyle1@austin.utexas.edu>, Pope, Joanna <jopope@austin.utexas.edu>
Subject: Re: 10am Tomorrow

SCAI feels strongly that ▓▓▓▓▓▓ should be discussed tomorrow as an emergent issue case.

All my best,
Melissa

MELISSA JONES-WOMMACK, M.A., Executive Director – Student Conduct and Academic Integrity
The University of Texas at Austin | Office of the Dean of Students | 512-471-2841 | deanofstudents.utexas.edu

*While it suits me to email after business hours, I do not expect you to respond outside of your own working hours.*

From: Joseph Jr., Patrick <patrick.joseph@austin.utexas.edu>
Date: Wednesday, September 3, 2025 at 12:00 PM
To: Wommack, Melissa <mwommack@austin.utexas.edu>, Campbell, Natalie <natalie.campbell@austin.utexas.edu>, Sunny Pate <sunny.pate@austin.utexas.edu>, Joffrey Niessen <joffrey@austin.utexas.edu>, Soucy, Kelly L <Kelly.Rifenbark@austin.utexas.edu>, Doyle, Jeff <jeffrey.doyle1@austin.utexas.edu>, Pope, Joanna <jopope@austin.utexas.edu>
Subject: 10am Tomorrow

Hello All,

EA 59
12/17/2025

We will discuss the following students at tomorrow's 10am meeting:

New Referrals:



Ongoing Cases:

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- Jennifer Brantley ▓▓▓▓▓
@Pope, Joanna: lease add these student's name to the appropriate BOX document.

Thank you

--
PATRICK JOSEPH JR. (he/him/his), Senior Associate Director of Student Outreach and Support
The University of Texas at Austin | Office of the Dean of Students
512-471-5017 | deanofstudents.utexas.edu/emergency

[ GIVE TO THE DIVISION OF STUDENT AFFAIRS ]

EA_12/17/2023_60



EA_ 61

**Subject:** Jennifer Brantley - Interim Action Contestation

**Location:** SSB Conference Room 4.492

**Organizer:** natalie.campbell@austin.utexas.edu

**Start time:** Monday, October 6, 2025 at 2:00 PM

**End time:** Monday, October 6, 2025 at 2:30 PM

EA_ 62

Friday, November 14, 2025 at 10:40:53 AM Central Standard Time

**Subject:** Re: Mini BAT - JB
**Date:** Saturday, October 25, 2025 at 6:01:43 PM Central Daylight Time
**From:** Soucy, Kelly L
**To:** Campbell, Natalie
**CC:** Joseph Jr., Patrick, Wommack, Melissa

Hi Natalie-

Monday at 1230 works for me.

Thanks,
**KELLY SOUCY, Ed.D.**
Associate Dean of Students | Deputy TIX Coordinator
The University of Texas at Austin | Office of the Dean of Students |
512-232-2854 | deanofstudents.utexas.edu

On Oct 25, 2025, at 5:40 PM, Campbell, Natalie
<natalie.campbell@austin.utexas.edu> wrote:

Hi both,

Jennifer Brantley has ignored our recent warning to uphold the no contact order
and has emailed Dr. Wolford 5 times since Friday. Could we please find time to
discuss on Monday? I see the 4 of us are free at 12:30 and I'm happy to
schedule that for us if that works.

Melissa and I discussed getting IT involved to try and get him some relief from
her emails. He's forwarded me a few she's sent so far and she's calling him
names and threatening to put up the website again.

Best,

Natalie Campbell, M.S. (she/her), Senior Associate Director – Student
Conduct and Academic Integrity
The University of Texas at Austin | Office of the Dean of Students | (512) 232-
2856 | deanofstudents.utexas.edu

**Upcoming PTO:**

EA_ 63

1 of 2

November 7th, 10th, &11th
<Re_.eml.eml>
<Re_ 2.eml.eml>
<(No Subject).eml>



**Microsoft Teams**  Need help?

**Join the meeting now**
Meeting ID: 217 782 191 326 9
Passcode: k8CU3hz3

EA_ 65

| | |
|---|---|
| **Subject:** | Mini BAT - JB |
| **Location:** | Microsoft Teams Meeting |
| **Organizer:** | natalie.campbell@austin.utexas.edu |
| **Start time:** | Monday, October 27, 2025 at 12:30 PM |
| **End time:** | Monday, October 27, 2025 at 1:00 PM |

---

# Microsoft Teams   Need help?

## Join the meeting now

Meeting ID: 217 782 191 326 9

Passcode: k8CU3hz3

**Dial in by phone**

+1 512-831-7901,,679036195#   United States, Austin

Find a local number

Phone conference ID: 679 036 195#

For organizers: Meeting options | Reset dial-in PIN



The University of Texas at Austin

For assistance with Teams, please contact the UT Service Desk at (512) 475-9400 or help@utexas.edu.

Org help | Privacy and security

---

EA_ 66

Tuesday, January 6, 2026 at 9:14:34 AM Central Standard Time

XXXXXX Update

**Date:**   Monday, October 27, 2025 at 5:50:05 PM Central Daylight Time
**From:**   Campbell, Natalie
**To:**     Dukerich, Janet M, Ortega, Andrea
**CC:**     Wommack, Melissa, Soucy, Kelly L

Good afternoon,

I hope you are both doing well. We were notified over the weekend that student Jennifer Brantley XXXX contacted Dr. Scott Wolford after a no contact was put in place on August 18th. Dr. Wolford reached out to me on Saturday, and we pulled together a last-minute group to determine next steps for the student and faculty.

Based on the student's behavior, we will be issuing additional charges for failure to comply with directives tomorrow.

It was also determined that Kelly and BRAC will work on a plan to redirect the messages he receives from her, in conjunction with IT. Additionally, Dr. Wolford contacted UTPD about his public speaking event on November 11th and they plan to provide close patrol for the event.

Kelly - anything else I missed?

Best,

**Natalie Campbell, M.S.** (she/her), Senior Associate Director – Student Conduct and Academic Integrity
The University of Texas at Austin | Office of the Dean of Students | (512) 232-2856 | deanofstudents.utexas.edu

**Upcoming PTO:**
November 7th, 10th, &11th

EA_ 67

1 of 1

**Subject:** Re: ▨▨▨ Update
**Date:** Monday, October 27, 2025 at 7:57:57 PM Central Daylight Time
**From:** Soucy, Kelly L
**To:** Campbell, Natalie
**CC:** Dukerich, Janet M, Ortega, Andrea, Wommack, Melissa

Hi all-

I messaged Jeff to request help with the emails. I will copy you both when I get a response.

Thanks,
**KELLY SOUCY, Ed.D.**
Associate Dean of Students | Deputy TIX Coordinator
The University of Texas at Austin | Office of the Dean of Students |
512-232-2854 | deanofstudents.utexas.edu

On Oct 27, 2025, at 5:50 PM, Campbell, Natalie
<natalie.campbell@austin.utexas.edu> wrote:

Good afternoon,

I hope you are both doing well. We were notified over the weekend that student Jennifer Brantley ▨▨▨ contacted Dr. Scott Wolford after a no contact was put in place on August 18th. Dr. Wolford reached out to me on Saturday, and we pulled together a last-minute group to determine next steps for the student and faculty.

Based on the student's behavior, we will be issuing additional charges for failure to comply with directives tomorrow.

It was also determined that Kelly and BRAC will work on a plan to redirect the messages he receives from her, in conjunction with IT. Additionally, Dr. Wolford contacted UTPD about his public speaking event on November 11th and they plan to provide close patrol for the event.

Kelly - anything else I missed?

Best,

EA_ 68

1 of 2

Wednesday, December 17, 2025 at 3:56:20 PM Central Standard Time

**Subject:** Re: Updates
**Date:** Tuesday, October 28, 2025 at 2:03:09 PM Central Daylight Time
**From:** Ortega, Andrea
**To:** Dukerich, Janet M

Sounds good. I'll send over an invite.

**From:** Dukerich, Janet M <janet.dukerich@austin.utexas.edu>
**Date:** Tuesday, October 28, 2025 at 1:55 PM
**To:** Ortega, Andrea <aortega@austin.utexas.edu>
**Subject:** Re: Updates

I'm meeting with Mary Steinhardt at 2. Can we meet at 3?

**JANET M. DUKERICH**
Vice Provost for Advocacy & Dispute Resolution
Office of the Executive Vice President and Provost
Professor, Management
Hugh Roy Cullen Centennial Chair
The University of Texas at Austin

**From:** Ortega, Andrea <aortega@austin.utexas.edu>
**Date:** Tuesday, October 28, 2025 at 12:56 PM
**To:** Dukerich, Janet M <janet.dukerich@austin.utexas.edu>
**Subject:** Updates

I have updates on Brantley, ▮▮▮▮ and ▮▮▮▮ If possible, can we hop on a call this afternoon to discuss?

EA_ 69

1 of 1



**The University of Texas System**

OFFICE OF GENERAL COUNSEL
210 WEST SEVENTH STREET
AUSTIN, TEXAS 78701
512-499-4462
UTSYSTEM.EDU

Jennifer Burnett
*Associate General Counsel & Public Information Coordinator*

January 22, 2026

Open Records Division
William B. Clements, Jr. State Office Building
300 W. 15th Street, 11th Floor
Austin, Texas 78701

Re:     **Public Information Request #17 from Jennifer Brantley to The University of Texas at Austin -- OGC# 223621**

On January 7, 2026, The University of Texas at Austin (University) received a request for information from Jennifer Brantley (Requestor). The University subsequently sent the request to The University of Texas System (UT System) for handling with your office.

In accordance with section 552.301 of the Texas Government Code, we now send this request for decision within ten business days from the date the request was received, excluding the January 19, 2026, Martin Luther King, Jr. holiday, when the University was closed. UT System has copied the Requestor on this letter brief in accordance with section 552.301(d).

The Requestor seeks access to the following information:

> *[A]ll records sufficient to show the risk rating/threat level/priority level assigned to me in any BAT/BRAC/BCAL/SOS matter, including the date assigned, the person/role who assigned it, and the rubric or criteria used.*
>
> *Records sufficient to identify the behavioral assessment tools and training used by SOS/BAT (and BRAC if relevant), including (1) the name of each tool (vendor/product/framework), (2) any risk rating rubric/matrix (categories, criteria, scoring, thresholds), and (3) any standard operating procedures describing how the tool is applied (intake, escalation, closure).*
>
> *Records sufficient to show BAT/BCAL/SOS training materials used in 2025 (slides, handouts, scripts, job aids, checklists) describing (1) how to classify distressing behaviors, (2) when to escalate to BAT/BRAC, and (3) how risk ratings are assigned.*

THE UNIVERSITY OF TEXAS AT ARLINGTON · THE UNIVERSITY OF TEXAS AT AUSTIN· THE UNIVERSITY OF TEXAS AT DALLAS
THE UNIVERSITY OF TEXAS AT EL PASO · THE UNIVERSITY OF TEXAS AT OF THE PERMIAN BASIN · THE UNIVERSITY OF TEXAS RIO GRANDE VALLEY
THE UNIVERSITY OF TEXAS AT SAN ANTONIO · STEPHEN F. AUSTIN UNIVERSITY · THE UNIVERSITY OF TEXAS AT TYLER
THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER · THE UNIVERSITY OF TEXAS AMEDICAL BRANCH AT GALVESTON·
THE UNIVERSITY OF TEXAS HELATH SCIENCE CENTER AT HOUSTON · THE UNIVERSITY OF TEXAS MD ANDERSON CANCER CENTER

EA_70

We have notified the affected third parties of the request and sent notice to advise them of their opportunity to object to the release of their documents. The third parties have not agreed to the release of the information at issue.

Responsive information may be excepted from disclosure under certain provisions in the Texas Government Code. Specifically, sections 552.101, 552.110, 552.1101, 552.113, and 552.131 may apply if the requested information reveals company trade secrets, financial and commercial/competitive information including, but not limited to, the pricing structure and details of the services provided by the third parties.

In addition, the University asserts some of the submitted information is protected from disclosure under section 552.107 of the Texas Public Information Act ("Act").

### Section 552.107 of the Texas Government Code

The University asserts the information we have marked is protected under section 552.107 of the Act. Section 552.107(1) of the Texas Government Code protects information from public disclosure if it is prohibited from disclosure by "a duty to the client under the Texas Rules of Evidence or the Texas Disciplinary Rules of Professional Conduct." TEX. GOV'T CODE § 552.107(1). As discussed below, Attorney General open records decisions have specifically cited Rule 503 of the Texas Rules of Evidence ("Rule 503") with regard to attorney-client privilege or Rule 192.5 of the Texas Rules of Civil Procedure when considering core work product. See also, TEX. DISCIPLINARY R. OF PROF'L. CONDUCT § 1.05. These rules also extend to the exception to disclosure under section 552.107 of the Texas Government Code.

Under Rule 503, the privilege extends to a "client" or any "representative of a client." TEX. R. EVID. § 503(b). A representative of a client is a "person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client, or any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. § 503(a)(2). Open Records Decision No. 676 examines the scope of section 552.107(1) and holds, "information that is protected under Texas Rule of Evidence 503 is excepted from disclosure under Section 552.107(1)." Open Record Decision No. 676 (2002).

Open Records Decision No. 676 also states that "[a]n attorney for a governmental body has an independent duty of confidentiality for information subject to the attorney-client privilege as defined in Texas Rule of Evidence 503." *Id.* Continuing, the decision states, "[a] governmental body has as much right as a private individual to consult with its attorney without risking the disclosure of communications protected by the attorney-client privilege." *Id.* Further, section 552.107(1) protects the contents of the entire document containing privileged communications and not just portions designated as legal analysis or recommendations. *Harlandale ISD v. Cornyn*, 25 S.W.3d 328 (Tex. App.—Austin 2000, pet. denied).

2

# EA_71

In the information at issue, an attorney for the University is providing legal counsel, gathering information in order to provide legal counsel, or their clients are seeking legal advice from the attorney and include the necessary background information so that counsel will be able to render an opinion on a given situation. From the text of the communications, it is evident that the attorney for the University was involved in providing legal counsel to employees of the University. We have identified the attorney on the face of the documents; all remaining parties to the communications are personnel of the University and/or are their representatives, and the issues of concern raised in these documents are within the course and scope of their employment and/or service to the University. Thus, these individuals are clients with the authority to obtain legal advice and act on such advice as provided by the attorneys in their capacity as legal counsel. In addition, the privilege extends to the representatives of the attorneys and clients. Finally, the information has been kept confidential and these documents were maintained only by and between the persons identified and protected by the privilege. They were not intended to be, and have not been, disclosed to parties other than those encompassed by the protection of the attorney-client privilege.

The University has the burden of demonstrating how and why responsive information is excepted under the attorney-client privilege and must show that the responsive documents include confidential communications "to, from, or between representatives of the client governmental body, made for the purpose of effectuating legal representation for it, and the subject matter must pertain to the performance by each client representative of the duties of his or her employment." *See* Open Records Decision No. 676 (2002). We believe we have provided your office with evidence sufficient to meet this burden. Thus, it is our position that the information at issue is confidential and privileged from disclosure and discovery under section 552.107 of the Texas Government Code.

### Conclusion

In addition to any third-party arguments, the University respectfully requests that the Attorney General review the arguments presented in this brief and issue a ruling that the responsive information is protected as described herein.

All interested parties are listed below. If you need additional information, please do not hesitate to contact me at 512-579-5187.

Sincerely,

Jennifer Burnett

cc: Third Parties:

3

EA_ 72

National Association for Behavioral Intervention and Threat Assessment
jen.taylor@nabita.org

TNG Consulting
makenzie.schiemann@tngconsulting.com
tim.cason@tngconsulting.com

cc: Requestor: (w/o Enclosures)

Jennifer Brantle


4

**Subject:** Re: Interim Action (No Contact) - Jennifer Brantley
**Date:** Monday, August 18, 2025 at 5:09:31 PM Central Daylight Time
**From:** Dukerich, Janet M
**To:** Ortega, Andrea

We can involve the dean's office once we have a better idea about the situation at the departmental level. If the new department chair doesn't have an assistant chair then we might advise her using the associate dean if the student wants to meet.

**JANET M. DUKERICH**
Vice Provost for Advocacy & Dispute Resolution
Office of the Executive Vice President and Provost
Professor, Management
Hugh Roy Cullen Centennial Chair
The University of Texas at Austin

**From:** Ortega, Andrea <aortega@austin.utexas.edu>
**Date:** Monday, August 18, 2025 at 4:16 PM
**To:** Dukerich, Janet M <janet.dukerich@austin.utexas.edu>
**Subject:** Re: Interim Action (No Contact) - Jennifer Brantley

Melissa said, "No direct threats, but she has told him she knows where he lives and is going around to establishments near his home, asking about him and his whereabouts"

**From:** Ortega, Andrea <aortega@austin.utexas.edu>
**Date:** Monday, August 18, 2025 at 4:15 PM
**To:** Dukerich, Janet M <janet.dukerich@austin.utexas.edu>
**Subject:** Re: Interim Action (No Contact) - Jennifer Brantley

Dr. Wolford is a professor of government, he reports to Dean Sosa. She (Brantley, the student) previously reported him to DIA for discrimination and it was dismissed. (I've attached it to this email.) I've asked Melissa at Student Conduct if there is anything important we should know about the case. Do you want me to schedule with the college (Dean Sosa) to let them know?

Ortega

EA_ 74

1 of 2



EA_ 75



Jennifer Ferrell Brantley <jbrantley@utexas.edu>

## Ineligibility To Be On Campus--INTERIM ACTION

1 message

**Office of Student Conduct and Academic Integrity (via Maxient)** <notifications@maxient.com>    Mon, Aug 18, 2025 at 3:51 PM

Reply-To: Office of Student Conduct and Academic Integrity <studentconduct@austin.utexas.edu>
To: Jennifer Brantley <jbrantley@utexas.edu>

The Office of Student Conduct and Academic Integrity writes to notify you of an important message that requires your attention. Your letter will appear in PDF format and should be printed or saved for your records. If the letter fails to appear, you may need to use a different computer or install the free Adobe Acrobat Reader. If you continue to experience difficulty accessing your letter or wish to confirm the legitimacy of this message, please contact our office at 512-471-2841 or studentconduct@austin.utexas.edu.

Pick up your letter



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

August 18, 2025

Jennifer Brantley
Sent electronically to jbrantley@utexas.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2025559302

Notice To: Jennifer Brantley

In response to your recent conduct, and in accordance with Section 11-502 of The University of Texas at Austin's *Institutional Rules on Student Services and Activities*, The University of Texas at Austin ("university") initiated an interim disciplinary action against you. Under the interim disciplinary action, **you are immediately restricted** from contacting Dr. Scott Wolford and Briana Dobson, **effective August 18, 2025.**

**Please see the attached notice for full details of this interim action.**

CC:  Melissa Wommack, Acting Executive Director for Student Conduct and Academic Integrity

EA_ 77



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

**CONFIDENTIAL**

August 18, 2025

Jennifer Brantley
7117 Wood Hollow Dr
Apt 1126
Austin, TX 78731

Sent via email: jbrantley@utexas.edu

Dear Jennifer,

In response to your recent alleged conduct, specifically failure to comply with directives, disruptive conduct, and stalking behavior, and in accordance with Section 11-502 of The University of Texas at Austin's Institutional Rules of Student Services and Activities (2024-2025), I hereby notify you that **The University of Texas at Austin ("university") has initiated interim disciplinary action against you.**

As outlined in Section 11-502, an interim action is warranted:

> "If the continuing presence of the student is a potential danger to persons or property or a potential threat of disrupting the academic process or any activity authorized by the University, or in cases where actual or threatened violent conduct against a person is alleged…."

**NO CONTACT DIRECTIVE** - Effective August 18, 2025, immediately
Through this interim disciplinary action, you are immediately prohibited from communicating, directly or indirectly, with Dr. Scott Wolford and Briana Dobson. This prohibition includes, but is not limited to, contact via phone, e-mail, instant message, other electronic means, in person, or via a third party.

**If you violate the terms of this letter, you will be subject to further university discipline.**

**To Contest this Action:** You may meet with the Dean of Students, or their designee, to contest the interim action taken by the University. If requested, a meeting will be conducted within 10 days from the date of this request, as authorized in section 11-502(d) of the Institutional Rules, unless a later date is mutually agreed upon. You must request the meeting within five days from the date of this letter. This request must be submitted via email to studentconduct@austin.utexas.edu. If you are unable to meet because you are being detained by law enforcement or in a mental health facility, the five-day hearing request will be extended until you are released. The procedures regarding Interim Disciplinary Action are outlined in detail under in Section 11-502 of the Institutional Rules.

**Administrative Resolution:** If you choose not to contest this interim action through the process outlined above, you may resolve this matter administratively as outlined in Section 11-504 of the Institutional Rules. To schedule such a meeting or administrative disposition, contact studentconduct@austin.utexas.edu.

Respectfully,

Melissa Jones-Wommack
Executive Director of Student Conduct and Academic Integrity

Copy to:

EA_ 78

John Dalton, Vice President for Student Affairs
Amanda Cochran-McCall, Vice President for Legal Affairs
Dr. Janet Dukerich, Senior Vice Provost for Faculty Affairs
Chief Shane Streepy, UT Police Department
Katie McGee, Associate Vice President for Student Affairs and Dean of Students

EA_ 80



Jennifer Ferrell Brantley <jbrantley@utexas.edu>

## Re: Next Steps in Conduct Case

Soucy, Kelly L <Kelly.Rifenbark@austin.utexas.edu>
To: "jbrantley@utexas.edu" <jbrantley@utmail.utexas.edu>
Cc: "Campbell, Natalie" <natalie.campbell@austin.utexas.edu>, "Hutto, Christopher J" <chris.hutto@austin.utexas.edu>

Hi Jennifer-

I recognize that the interim measure of no contact remaining may have been jarring to receive. However, you indicated in our meeting you did not want contact with the professor. The no cont:

The measure remaining in place does not nullify that you indicated you have no desire to harm this individual. It also does not nullify the information you shared with me regarding not going to

Please let me know if you would like to set up a call to further discuss your concerns.

Sincerely,
KELLY SOUCY, Ed.D.
Associate Dean of Students | Deputy TIX Coordinator
The University of Texas at Austin | Office of the Dean of Students |
512-232-2854 | deanofstudents.utexas.edu

On Oct 16, 2025, at 4:59 PM, Jennifer Brantley <jbrantley@utexas.edu> wrote:

At this point, after trying my best and not actually being heard or considered, my mother has decided that she will be contacting news organizations to get a reporter who will hear us.



### Jennifer Ferrell Brantley
CMA (AAMA), CPT, CES, CNC, MNTS, LMT, LE, BLS, CBS

Government Major / Holocaust and Genocide Studies Minor
Social Inequality, Health, and Policy (Public Health) BDP
Gilman Scholar Alumni, U.S. Department of State
College of Liberal Arts, The University of Texas at Austin
jfb2547 / jbrantley@utexas.edu



Member of the American Association of Medical Assistants | Texas Society of Medical Assistants | Dallas Holocaust and Human Rights Museum | LBJ Presidential Library and Museum | Texas Exes (Student Life Member) | New Wave Longhorns | Phi Beta Kappa | Phi Kappa Phi | Pi Sigma Alpha | Tau Sigma | Phi Sigma Pi | Omicron Delta Kappa | Phi Theta Kappa | Psi Beta | Sigma Kappa Delta | Mu Alpha Theta | Sigma Alpha Lambda | The National Society of Collegiate Scholars | The National Society of Leadership and Success | Dallas College Alumni Network | Dallas College Honors Scholar | Dallas College Honors Student Organization

On Thu, Oct 16, 2025 at 4:47 PM Jennifer Brantley <jbrantley@utexas.edu> wrote:
Every single time I think I'm going to get some relief or help from the damage this has done to me and my reputation, and it never materializes.



### Jennifer Ferrell Brantley
CMA (AAMA), CPT, CES, CNC, MNTS, LMT, LE, BLS, CBS

Government Major / Holocaust and Genocide Studies Minor
Social Inequality, Health, and Policy (Public Health) BDP
Gilman Scholar Alumni, U.S. Department of State
College of Liberal Arts, The University of Texas at Austin
jfb2547 / jbrantley@utexas.edu



Member of the American Association of Medical Assistants | Texas Society of Medical Assistants | Dallas Holocaust and Human Rights Museum | LBJ Presidential Library and Museum | Texas Exes (Student Life Member) | New Wave Longhorns | Phi Beta Kappa | Phi Kappa Phi | Pi Sigma Alpha | Tau Sigma | Phi Sigma Pi | Omicron Delta Kappa | Phi Theta Kappa | Psi Beta | Sigma Kappa Delta | Mu Alpha Theta | Sigma Alpha Lambda | The National Society of Collegiate Scholars | The National Society of Leadership and Success | Dallas College Alumni Network | Dallas College Honors Scholar | Dallas College Honors Student Organization

On Thu, Oct 16, 2025 at 4:32 PM Jennifer Brantley <jbrantley@utexas.edu> wrote:
I believe that I have shown enough good faith in UT's processes and systems and have indisputable proof that they just do not work for students at all. I will not be engaging any fur



### Jennifer Ferrell Brantley
CMA (AAMA), CPT, CES, CNC, MNTS, LMT, LE, BLS, CBS

Government Major / Holocaust and Genocide Studies Minor
Social Inequality, Health, and Policy (Public Health) BDP
Gilman Scholar Alumni, U.S. Department of State
College of Liberal Arts, The University of Texas at Austin
jfb2547 / jbrantley@utexas.edu



EA_81

This transcript was exported on Dec 28, 2025 - view latest version here.

Nancy Brantley (00:00):

Um,

Dr. Kelly Soucy (00:00):

Sure.

Nancy Brantley (00:02):

I just received this, um, notice from Jennifer from you indicating that you don't believe that she's not a threat to Dr. Wolford, even though she sat there and cried and tried to convince you every way that she could, that she was telling the truth and he was lying, which he is. The one thing, Jennifer, is,

Dr. Kelly Soucy (00:25):

Lemme pull up the document because my staff sent that. I'd like to read [00:00:30] the exact wording of it.

Nancy Brantley (00:32):

Okay.

Dr. Kelly Soucy (02:00):

[00:02:00] Okay. So I've read the letter and what it indicates is that this interim measure is in place until the conduct process is complete. It does not indicate that Jennifer is a threat to, uh, the professor. And I indicated that in an email to her last night, that the information she shared in her perspective is being taken into account in the student conduct file.

Nancy Brantley (02:23):

But if you look at the second, I believe it's the second line, however, [00:02:30] you indicated in our meeting, you did not want contact. Um, but your information, this does not nullify the information you share with me regarding not going to places. It does not nullify that you have no desire to ha harm this individual.

Dr. Kelly Soucy (02:49):

The words,

Nancy Brantley (02:50):

It doesn't nullify it. You don't believe her.

Dr. Kelly Soucy (02:54):

No, I said doesn't nullify the fact she shared those concerns with me and all of what [00:03:00] she shared, including the fact that I don't believe she's stalking him, is being included in the student conduct process to review in the actual case. I, I very much believe that Jennifer is having a hard time and I want to make sure that she's getting the support she needs by not having contact. This interim measure is only until play, until the actual conduct process is complete.

Nancy Brantley (03:27):

This transcript was exported on Dec 28, 2025 - view latest version here.

Well, she was so upset she didn't [00:03:30] go to class today

Dr. Kelly Soucy (03:32):
And I can send absence notes for her if she requests that. Absolutely. It would only indicate that there's been a personal emergency or a medical emergency depending on what she would like me to share.

Nancy Brantley (03:43):
Okay. I will tell her that. And I appreciate that. Um,

Dr. Kelly Soucy (03:50):
I understand that this is a lot, and believe me, I spent a lot of time with your daughter and want what's best situation for her, but we have a process we have to [00:04:00] go through and I know that the letter was not fun to receive by any means. Doesn't mean I am not here trying to support and get her through the process.

Nancy Brantley (04:13):
Well, I, she saved a little boy's life when she was a medical assistant at, um, the hospital in Dallas because of her 10. Oh, wow. Her, [00:04:30] um, doctor had gone home. They had seen this little five-year-old boy earlier in the day, and the mom called after hours. Jennifer was still there doing, um, catchup work and filing the doctor's notes and files and things. And, uh, she called, she was frantic. Something different was wrong with her little boy, and she described to Jennifer what was going on. Jennifer knew it was imperative that she get hold of the doctor. Well, the doctor had her phone shut off. She wasn't [00:05:00] taking anything and Jennifer just sat there and called Oh my gosh. And called and emailed and texted her until the doctor finally got aggravated and called and said, what? And Jennifer described it and the little boy had that flesh eating. Uh,

Dr. Kelly Soucy (05:18):
Oh my gosh.

Nancy Brantley (05:19):
Yes. And they said at the emergency room, she said, I'll meet them at the emergency room that if he had not been seen when he was seen, he would've died.

Dr. Kelly Soucy (05:30):
[00:05:30] Yes.

Nancy Brantley (05:31):
And it's because of her tenacity. And this is part of what you are seeing.

Dr. Kelly Soucy (05:37):
Sure.

Nancy Brantley (05:38):
Uh,

EA_ 83

This transcript was exported on Dec 28, 2025 - view latest version here.

Dr. Kelly Soucy (05:39):

I completely agree. And I explained to Jennifer during our conversation that there are some of the things that are happening or her response to the stress that this is causing are absolutely normal based on the trauma she's experienced.

Nancy Brantley (05:54):

Well, she has never ever, and and she, she calls [00:06:00] and talks to me and she texts me and believe me, I don't like the 400 email, uh, text messages instead of one paragraph that not 400. But you understand. Um, yeah, I

Dr. Kelly Soucy (06:13):

Understand.

Nancy Brantley (06:14):

Uh, I have a friend, her daughter does the same thing. I think it's a thing with kids now, uh, the younger generation anyway, that they send you one sentence at a time instead of a paragraph. Um, I'm, [00:06:30] excuse me. You okay? I just, yeah, you wrong. You Yes.

Dr. Kelly Soucy (06:38):

Okay.

Nancy Brantley (06:39):

Anyway, um, when she's stressed, I get lots more and I'm sure it that's a

Dr. Kelly Soucy (06:49):

Trauma response one hundred. Yeah.

Nancy Brantley (06:51):

Yes. He doesn't understand any of that.

Dr. Kelly Soucy (06:55):

And he doesn't, and that's why I don't want her communicating with him,

Nancy Brantley (06:59):

Whether it's [00:07:00] Well, she doesn't wanna communicate with him.

Dr. Kelly Soucy (07:02):

Right, exactly. But that's what I'm saying is I don't want any reason for him to contact her or vice versa until this conduct process is finalized and in the conduct process she can say, Hey, I want a permanent no contact directive, so I will never hear from him again. You know, those are things she can also ask for because of the situation and circumstances. This interim [00:07:30] process is just getting us through the end of the conduct side.

Nancy Brantley (07:34):

EA_ 84

This transcript was exported on Dec 28, 2025 - view latest version here.

I understand. I have three friends, very close friends that are professors at universities. Uh, two of them at a and m. Um, they have all told me that if she had filed against him first, he would've been the one defending himself. Not, not that she would've been on the offensive, [00:08:00] not the defensive. Uh, she has no one on her side. You have to admit that. No one, he has two faculty advisors. He has a team of lawyers at the university, and he has the entire staff of the, uh, attorney general's office, plus the judges who are all professors of law at the university. Where does she go? How, I mean, we were offered, uh, [00:08:30] this one profe, uh, this one lawyer said, I can win this case. It will start at a hundred thousand dollars. Well, I only have $140,000 in my biggest, um, retirement account.

(08:43):

I taught school for 38 years and we'd have to sell our house and where would we live? But I I, she didn't want any of this. She just thought she could talk it out [00:09:00] and everything would be okay, but he didn't want that. He wanted to punish her. And this is 100% a thing of his game theory is the only way he made fun of her in class. Um, he made sure that she knew that he did not value her. He made sure that his, uh, student assistant did not [00:09:30] value her, uh, would just tell her to go away. He does not believe she has any, um, disabilities that would cycle into all this situation. And it most certainly does. Um, I I, I don't know what to tell you. From our perspective. All we can see is the school and [00:10:00] all administrators, all the lawyers coming together to protect this man and the made up stories that he has told. So that what do you wanna get rid of her? Is that what you're trying, y'all are trying to do? I, I hope not. She,

Dr. Kelly Soucy (10:27):

That is not the student conduct [00:10:30] process is an educational process. I understand that with everything that she has gone through, that she probably is in fight or flight right now. I'm not trying to make assumptions or excuses by any means. We just need to get through the conduct process. And that included the long meeting she had with me and everything she said to me about I wasn't following him. I went to this one location. I happened to know that [00:11:00] he used to go there. Things like that are in the file to negate what concerns were brought to conduct. Conduct is a process, process where both sides need to be heard and absolutely having her engage because our sanctions have not been determined.

Nancy Brantley (11:17):

Okay. But she has no advocate, not one, not one advocate.

Dr. Kelly Soucy (11:25):

She has been working with case managers. And [00:11:30] my understanding is that Corey in particular has been someone that has been helpful. I have, and I get it. I understand why she doesn't see me as a support system, but I am here regardless of how upset she is for her.

Nancy Brantley (11:44):

Okay. Um, I don't know why she didn't mention the fact that she took her dad and I to that pizza place. Uh, that's, uh, you know, like's where her next door neighbor works. Exactly.

Dr. Kelly Soucy (11:58):

Yeah.

P-010 DOS Phone Call Nancy Brantley and Dr (Completed  12/28/25)     Page 4 of 8
Transcript by Rev.com
EA_ 85

This transcript was exported on Dec 28, 2025 - view latest version here.

Nancy Brantley (11:59):

And [00:12:00] we, um, ate pizza and sat and talked to some people for a while. Um, I don't, I I just don't understand the stalking charges. The fact that she said, you know, I could just put this on YouTube or something, or, or whatever the Yeah. Latest chat room is.

Dr. Kelly Soucy (12:24):

Yeah.

Nancy Brantley (12:25):

But she didn't, she wouldn't. And uh, [00:12:30] it was just something that she frustration talking. Um, like I said, she feels like there is no one there for her. Um, people have been, she,

Dr. Kelly Soucy (12:45):

She's, yeah.

Nancy Brantley (12:46):

People have been shocked that she doesn't have a dedicated advocate.

Dr. Kelly Soucy (12:51):

That is who the case manager Corey is. I know that, um, she has not wanted to engage, [00:13:00] um, with Patrick Joseph Jr. He is also a case manager <laugh>, um,

Nancy Brantley (13:08):

Yeah. Right. Yeah.

Dr. Kelly Soucy (13:10):

And I, I understand that, which is why we had a totally different staff member connect with her so that she does have someone that's unbiased or, you know,

Nancy Brantley (13:25):

I'm sorry. Well,

Dr. Kelly Soucy (13:29):

I, [00:13:30] Nancy, I need you to understand that you are welcome to also call me. You have a FERPA waiver. I am happy to talk through what is going on, but please know that this is a process and know the sanctions have not been determined.

Nancy Brantley (13:48):

Well, it sounds pretty permanent. And for a 47-year-old woman, it is permanent

Dr. Kelly Soucy (14:00):

[00:14:00] 'cause of the disciplinary record.

EA_ 86

This transcript was exported on Dec 28, 2025 - view latest version here.

Nancy Brantley (14:03):

Yes.

Dr. Kelly Soucy (14:06):

When the conduct process is complete, and if there is, let's say conduct has no findings of what's been alleged, that's also gonna show that she didn't do it. But we have to go through the process to get there.

Nancy Brantley (14:22):

But again, all she has is her word [00:14:30] against an entire university of lawyers and administrators and the Texas Attorney General's office. How do you think that stacks up at the end?

Dr. Kelly Soucy (14:50):

It doesn't feel good. I'm sure it doesn't.

Nancy Brantley (14:52):

No,

Dr. Kelly Soucy (14:53):

And

Nancy Brantley (14:53):

It's not.

Dr. Kelly Soucy (14:55):

I am over student conduct. I had [00:15:00] the conversation with Jennifer. I know she's not a threat to our community. I am able to provide that information into the full conduct process. Jennifer doesn't have to believe that I'm gonna support her, but she will see it at one point.

Nancy Brantley (15:16):

Well, I just appreciate your calmness in this is not a calm situation for us.

Dr. Kelly Soucy (15:26):

Absolutely. I know it's stressful and I know that all the traumas [00:15:30] she's experienced, this isn't good for her to be through.

Nancy Brantley (15:35):

Just the fact that she talked about her economics class, that she had to struggle so much. I was at her apartment and I watched her watch this one class recorded session three times through before it finally snapped in her brain. And she got it. And she made the highest grade on the test that day.

Dr. Kelly Soucy (16:00):

[00:16:00] That's great.

This transcript was exported on Dec 28, 2025 - view latest version here.

Nancy Brantley (16:01):

But she just has to work so hard at everything she does. And she, I don't know when she sleeps because she was door dashing like crazy. And when she could, she would fill in with Amazon or any other job that she could, so then she would stay up all night and do her lessons. Yeah. And it was just, [00:16:30] I don't know. I just hate to see her suffer.

Dr. Kelly Soucy (16:35):

I know you are a good parent who cares very much about your student.

Nancy Brantley (16:44):

Only have one call left. And I just Yeah. Hate to see her go through such a hard time losing my son, losing her brother. And [00:17:00] I just, I'm sorry, just wasting your time.

Dr. Kelly Soucy (17:08):

You're not, you're not wasting my time, Nancy, I understand this is a lot and it's a lot for you too because you're seeing how your student is having to go through so much. Please know, like I said, this is my direct line. You have a FERPA waiver, you are able to call and ask questions and whatnot, and I [00:17:30] will give you direct answers and when you can. So, like I said, no, I'm gonna give you direct answers 100% because you've got a FERPA waiver.

Nancy Brantley (17:41):

Okay. Well,

Dr. Kelly Soucy (17:42):

So the fact that I can read the interim letter and clarify to you clarify is one of the examples that I'm, I'm gonna be real with you.

Nancy Brantley (17:53):

Okay? Okay. I appreciate that. I do. Yeah. I just, um, [00:18:00] I just want you to know

(18:03):

What amazing person she's has been caught up in this whirlwind of trauma and she

(18:15):

Doesn't deserve it. And it all started with all those emails and he, he could have just hit the button and blocked her and he didn't even try.

Dr. Kelly Soucy (18:29):

Yeah. [00:18:30] Yeah.

Nancy Brantley (18:33):

I'm sorry. Listen, I won't keep you any longer. I appreciate you talking with me. And of course,

New Speaker (18:41):

Let me know if you have other questions, Nancy. Okay.

EA_ 88

This transcript was exported on Dec 28, 2025 - view latest version here.

Nancy Brantley (18:43):
Okay. Um, I appreciate that. Thank you so much.

**Link to Dropbox Audio Recording for Phone Call Between Soucy and Plaintiff's Mother:**

https://www.dropbox.com/scl/fi/z8vpi2joh9hdj2qdqt8ft/DOS-Phone-Call-Nancy-Brantley-and-Dr.-Soucy-Audio-10-17-2025.m4a?rlkey=8twozk0i902l4gacav7p1nlgd&st=mn8wvnee&dl=0

EA_ 90



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 · Austin, TX 78712 · (512) 471-5017 · FAX (512) 471-7833*
*deanofstudents.utexas.edu · deanofstudents@austin.utexas.edu*

October 16, 2025

Jennifer Brantley
Sent electronically to jbrantley@utexas.edu

                                                    **PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2025559302

Notice To: Jennifer Brantley

On October 6, 2025, you were issued an Interim Action Letter as a result of conduct that met the criteria outlined in Section 11-502 of the *Institutional Rules.* You appealed the interim action and this letter is to inform you of the decision regarding the appeal.

The record in your case has been reviewed and considered, as well as the information shared in the meeting with Dr. Kelly Soucy, held **October 6, 2025**, and there is no basis on which to alter the interim action.

This disciplinary action is an interim measure; please continue to work with your Conduct Administrator, Natalie Campbell, in Student Conduct and Academic Integrity regarding the adjudication of this matter per section 11-503 of the *Institutional Rules.* If you have any questions about the next steps in the conduct process, please contact Student Conduct at studentconduct@austin.utexas.edu or 512-471-2841.

Student Conduct and Academic Integrity

Office of the Dean of Students

EA_ 91

 **Outlook**

---

**Re: Meeting**

---

**From** Campbell, Natalie <natalie.campbell@austin.utexas.edu>
**Date** Fri 10/31/2025 4:00 PM
**To**   Jennifer Ferrell Brantley <jfb2547@my.utexas.edu>
**Cc**   Hutto, Christopher J <chris.hutto@austin.utexas.edu>

Jennifer,

Please see the response to your concerns below:

**1. Clarification on "No Contact" Expectations:**
"No Contact" means you are prohibited from any communication—direct or indirect—with Dr. Scott Wolford and Briana Dobson. This includes, but is not limited to:

- Direct communication such as speaking in person, phone calls, emails, text messages, or instant messages.
- Indirect communication such as messages relayed through a third party, social media interactions, or public comments targeted toward them.

As a reminder, Dr. Kelly Soucy is available to you to help address your concern regarding inadvertent interactions and can work with your college to minimize that risk that you may run into Dr. Wofford on accident.

**2. Evidence and Case Documentation:**
I'd like to clarify the concerns you raised regarding evidence used in your case. To address your question, Ms. Dobson and Esteban Soto submitted incident reports to Student Conduct and to Title IX (which were referred to Student Conduct after they were dismissed) that included email attachments from you to Professor Wolford and Briana. These emails also included the no contact directive from Esteban (which can be found on page 13 of that document). All this information was included in the case documentation that you received on October 2, 2025.

No additional information outside of the submitted case materials has been relied upon to make determinations in your case. The documentation you were provided reflects the complete record that was reviewed and considered during this process. Additionally, I can see that our Case Manager has sent you your entire disciplinary record and that you opened it on October 29th at 3:41pm.

**3. Conduct Meeting:**
I understand that you and your mother are available to meet in person on Wednesday at 2 PM, and we can confirm this time for the meeting. This meeting will take place in the Student Services Building again on the 4th floor. Please let the front desk know that you are here for a meeting with me when you arrive.

**4. Withdrawing from UT**
If you are still considering withdrawing from UT, I recommend discussing this option thoroughly with Dr. Soucy, as she will be able to guide you on the potential implications and alternatives

available.

Best,

**Natalie Campbell, M.S.** (she/her),  **Senior Associate Director – Student Conduct and Academic Integrity**
**The University of Texas at Austin** I Office of the Dean of Students I (512) 232-2856 I
deanofstudents.utexas.edu

**Upcoming PTO:**
November 7th, 10th, &11th

**From:** Jennifer Ferrell Brantley <jfb2547@my.utexas.edu>
**Date:** Wednesday, October 29, 2025 at 5:15PM
**To:** Campbell, Natalie <natalie.campbell@austin.utexas.edu>
**Subject:** Re: Meeting

Ms. Campbell,

You have not explained what this means: "No Contact" as defined in the interim action letter issued to you on August 18, 2025, and the sanction language in the CRF issued to you on October 28, 2025, means you are prohibited from communicating, directly or indirectly, with Dr. Scott Wolford and Briana Dobson. This prohibition includes, but is not limited to, contact via phone, e-mail, instant message, other electronic means, in person, or via a third party.

You're just restating what's in the Outcome, you're not telling me anything I cannot read. I don't know what these words mean. I'm asking for examples and definitions. SCAI, VPLA and Wolford have never accommodated my communication impairments. I met with the Ombudsman today for help since I cannot find any... she agreed with me that SCAI and VPLA and Wolford should have been clarifying their language.

Dr. Soucy hasn't been any more helpful in this regard. I explained the two differing explanations I received from UTPD and Victim Services, but those are SCAI. I'm not in trouble with the other two offices. I've made it crystal clear what my communication needs are, and I've been ignored for months on this. You keep disciplining me for it.

And if SCAI is not communicating expectations, then you cannot find me responsible for something you never implemented or defined. I cannot be retroactively punished for something that wasn't included in the Outcome. That's not my fault.

And you explicitly said on the phone that you had emails from Soto and Wolford. You said that. And I know you met with Ms. Dobson, so you have notes. If you took their perspective, that's evidence against me.
What was in my file is not all that was relied upon. This is laundering/sanitizing the record to make it impossible for me to get due process.
The point is to repeatedly punish me and frame me as a threat and problem because disability discrimination is tied to federal funding.

So, everyone is sandbagging me. No one is helping me with my requests because you don't want me to NOT screw up. You want me locked in fight or flight. You want me to die by suicide. I didn't get to choose my neurobiology. My brain wiring is what I was born with. It's not a defect; it's a neurotype. Nearly 20% of the students on campus are neurodivergent, but only about 8% of them self-identify or seek accommodations because they're worried about how they'll be



**OFFICE OF THE DEAN OF STUDENTS**

*100 West Dean Keeton Street A5800 • Austin, TX 78712 • (512) 471-5017 • FAX (512) 471-7833*
*deanofstudents.utexas.edu • deanofstudents@austin.utexas.edu*

December 19, 2025

Jennifer Brantley
Sent electronically to jfb2547@my.utexas.edu

                                                    **PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2025852201

Notice To: Jennifer Brantley

This communication is to follow up on your request to resolve your student conduct case through a university hearing.

The hearing will be conducted by a Hearing Officer, a university employee appointed by the President to conduct hearings of alleged violations of Chapter 11 of the Institutional Rules

You must indicate your general availability for a hearing. Hearings are held between Monday and Friday from 9 AM-1 PM or 1 PM-5 PM, although, they may not last the entire four hours. In your email, list the general days of the week and their corresponding timeframe(s) that work best for you. If there are specific days that you cannot meet for a hearing, please note that in your response as well. Due to the timing of the semester, the hearing cannot take place until January 2026 or later.

Information about the hearing process and ways you can prepare for a hearing can be found on our website.

By **Thursday, January 8, 2025** you must email Natalie Campbell at natalie.campbell@austin.utexas.edu with your availability. If you do not respond, Student Conduct will proceed to schedule the hearing with a Hearing Officer, and based on your class schedule.

Best,

*[signature: Natalie Campbell]*

EA_ 94

Natalie Campbell
Senior Associate Director, Student Conduct and Academic Integrity

# Case Resolution Form

# 2025852201

| Name | SID | DOB | Role |
|---|---|---|---|
| Jennifer Ferrell Brantley | jfb2547 | 1978-08-06 | Alleged |

## I. Resolution Information

| Resolution Type | Resolution Date | Administrator(s) |
|---|---|---|
| Administrative Disposition | 2025-12-19 | Assoc. Dir. - SCAI (2) (Natalie Campbell) |

| Parental/Guardian Notification | Clery Reportability | Clery Rationale |
|---|---|---|
| No | Not Clery Reportable | |

## II. Charge / Issue and Finding

1. Failure to Comply - Directives                                    Responsible

## III. Sanction / Action

- Suspension from the University: During the period of Suspension from December 20, 2025 through May 10, 2026, you are prohibited from entering the campus of any institution within The University of Texas System without prior written approval of the chief student affairs officer of the institution at which you wish to be present. For permission to enter the campus of The University of Texas at Austin, you must: 1) obtain written approval from the Vice President for Student Affairs (this is in accordance with the Rules and Regulations of the Board of Regents of The University of Texas System, Rule 50101, Number 2, Section 3); 2) prohibition against entry onto any campus of the University may be waived if the case is academic in nature; for additional clarification, please contact the Office of the Dean of Students. You are not permitted to receive credit for academic work completed at another institution during the Suspension period. You are eligible to re-enroll after the successful completion of all of your educational sanctions issued by the Dean of Students. At the conclusion of the Suspension you must reapply to the University prior to registering for classes, provided you meet applicable admissions and financial deadlines and/or requirements. It is your responsibility to contact the Office of Admissions for information concerning the process for applying for readmission and pertinent deadlines. Additional readmission information may be found at https://admissions.utexas.edu/apply/returning-students/. It is also a violation to engage in any prohibited conduct while suspended for disciplinary reasons. In the event that you are found responsible for engaging in prohibited conduct that is either a violation of the Institutional Rules or any provisions of federal, state, or local laws, the University of Texas may take further disciplinary action up to and including suspension or expulsion.

## IV. Additional Sanctions/Stipulations

You are prohibited from communicating, directly or indirectly, with Dr. Scott Wolford and Briana Dobson. This prohibition includes, but is not limited to, contact via phone, e-mail, instant message, other electronic means, in person, or via a third party.

EA_ 96

## V. Rationale

On October 27, 2025, Student Conduct and Academic Integrity (Â"Student ConductÂ") received an incident report from Dr. Kelly Soucy, Associate Dean of Students, reporting that student Jennifer Brantley potentially violated Section 11-402(a)(16)(A) (Failure to ComplyÂ-Directives) by emailing Dr. Scott Wolford on October 21, 24, and 25, 2025, despite a formal no-contact order issued to her on August 18, 2025. The report from Dr. Soucy states, Â"The Office of the Dean of Students was made aware by Dr. Scott Wolford that Jennifer Brantley has sent email communication to him since 10/21/2025. She received an email reminding her of the no-contact directive following the first two emails. Since the reminder, Jennifer has continued to send email communication to Dr. Wolford.Â"

On August 18, 2025, Student Conduct issued an interim action to Jennifer in conduct case number 2025559302 prohibiting her from contacting Dr. Scott Wolford. Jennifer appealed the interim no-contact directive, and Associate Dean of Students Dr. Kelly Soucy upheld the interim no-contact directive on October 16, 2025. On October 21, Student Conduct was notified by Dr. Wolford that Jennifer copied him on two emails to an unknown third party. On October 22, 2025, Student Conduct issued a warning to Jennifer regarding contact with Dr. Wolford while the interim no-contact directive was in place. On October 24, 2025, Student Conduct issued a case resolution form to Jennifer for case number 2025559302, finding her responsible for failure to comply and disruptive conduct. The case resolution form provided Jennifer with her resolution options, including the potential to appeal the findings. Jennifer returned the form on October 24 at 3:29 pm indicating that she would appeal the findings. Jennifer subsequently emailed Dr. Wolford a total of five times between October 24 7:19 pm and October 25 4:53 pm. On October 24, 2025 at 9:07 pm, Jennifer sent an email to Student Conduct and the Office of the Vice President for Legal Affairs stating, among other things, Â"IÂ'm sure IÂ'll be talking to you soon because I emailed Wolford to tell him what a liar he is.Â"

On November 5, 2025, Student Conduct met with Jennifer to discuss the incident and the allegations outlined in the report. Jennifer acknowledged emailing Dr. Wolford, stating that the emails sent on October 21 were accidental, and explaining that Dr. Wolford was inadvertently copied as she worked between her phone and laptop. Jennifer explained, Â"I had gone around the corner from my house, had one drink, and went home to try and email Troy. His name did not pop up when I typed Troy, so I had to go back to my phone and saw it was Â'Mister Troy,Â' and when I went back to my computer, I donÂ't know how [Dr. Wolford] got copied.Â" She also stated that she is not technologically advanced.

Regarding the subsequent emails on October 24 and 25, Jennifer stated that her mother spoke with Dr. Soucy in October and was told that the interim no-contact directive would be lifted once case number 2025559302 was resolved. Jennifer indicated she was distressed after receiving the disciplinary decision and emailed Dr. Wolford. She provided a recording of her motherÂ's conversation with Dr. Soucy to support her claim. When asked about her October 24 email sent to Student Conduct, Jennifer explained she sent this after emailing Dr. Wolford and expected Dr. Wolford to report her contact, as he always does. She stated, Â"He doesnÂ't tell the truth and I can demonstrate that on paper.Â"

Jennifer provided written follow up on November 13, in which she wrote, Â"But UT insists on holding me responsible for an accidental inclusion when working between my phone and laptop late at night after drinking on October 21, 2025... The emails obviously were not intended for Wolford, and as IÂ've repeatedly explained, because I have to always hit Â'reply allÂ' now, itÂ's a mistake if I only hit Â'reply.Â' I didnÂ't know heÂ'd been added, and I didnÂ't notice in the early morning when I hit Â'reply all.Â'Â"

Jennifer further asserted, Â"No final no-contact sanction was issued, just like in the original conduct case (See SCAI Case 2025291101). The Interim Action was lifted when the case closed and no final sanction issued. However, UT went back and altered records post hoc, falsifying documents and presenting it as my Â'FERPA amendment request.Â' I did NOT accept the outcome of the disciplinary decision, and I did NOT request or approve amendment of SCAIÂ's reporting under FERPA.Â"

Although Jennifer claims she believed the conduct process was complete and the interim no-contact directive lifted, she

EA_ 97

submitted her appeal of case 2025559302 on October 24 at 3:29 pm, prior to the first email she sent to Wolford. The case resolution form does not indicate that the interim no-contact would lift upon appeal of the underlying case, and Jennifer has provided no evidence that an authorized UT employee informed her that the interim no-contact would lift upon appeal. Further, her email to Student Conduct on October 24 indicates that she knew emailing Wolford would be in violation of the no-contact directive. Student Conduct does not find credible JenniferÂ's assertion that she believed her actions were not in violation of the interim no-contact directive.

Based on the information outlined above, including the incident referral, JenniferÂ's own admissions, and documentary evidence, Student Conduct has determined, by a preponderance of the evidence, that Jennifer more likely than not violated Section 11-402(a)(16)(A) (Failure to Comply with Directives).

Sanction Rationale: Given that Jennifer Brantley has now been found responsible for violating Section 11-402(a)(16)(A) (Failure to Comply with Directives) for the third time, a one-semester suspension is warranted to address the persistent nature of her non-compliance. Despite previous warnings, interim actions, and educational interventions, Jennifer has repeatedly disregarded clear directives from university officials, undermining the integrity and authority of the conduct process. This pattern of behavior demonstrates a disregard for institutional expectations and suggests that lesser sanctions have been ineffective in modifying her conduct. The purpose of this suspension is to provide Jennifer with the necessary time and space to reflect on the seriousness of her actions and to reinforce the principle that repeated violations of university policy will result in increasingly severe consequences. A suspension also aligns with institutional precedent for students who have engaged in multiple, repeated violations and ensures the equitable enforcement of community standards.

## CC List

This document must be completed and returned to Student Conduct within five (5) days of receipt. Failure to complete the terms of the above-listed sanction(s) may result in additional sanctions and/or charges under the Code of Student Conduct.

Appeals: Appeals must be based on at least one of the appeal grounds listed in 11-801(c) of the Institutional Rules. Grounds for appeal include:
- Significant procedural error inconsistent with due process as outlined in subchapters 11-500 and 11-600 of the Institutional Rules.
- Discovery of new information unknown or not reasonably foreseeable to the accused student or the dean of students at the time of the hearing that was material to and could have reasonably impacted the disciplinary decision.
- The sanction(s) determined by the dean of students, hearing officer, or Student Conduct Board are significantly disproportionate to the violation.

For Academic Cases Only: Pursuant to section 11-507 of the Institutional Rules, students may not drop a course in which they have a pending academic misconduct matter, and any drops assigned during the adjudication of this matter, for the course in question, will not be considered final until the resolution of this matter. Similarly, any student who is found responsible for committing academic misconduct and issued any sanction(s) will not be eligible to drop the class or change the course grade to Pass/Fail or to Credit/No Credit for a course associated with the violation.

Records Retention: Disciplinary findings from Student Conduct may affect consideration and participation in other university programs including but not limited to international education opportunities (Texas Global). This document and related case materials will be kept in a confidential file in the Office of the Dean of Students for at least seven (7) years* per the UniversityÂ's record retention policy. *Cases resulting in Suspension or Expulsion will be kept permanently.

## EA_ 98

PLEASE SELECT ONE OF THE FOLLOWING RESOLUTION OPTIONS

☐ Option 1: I accept this disciplinary decision, waive my rights to an appeal or hearing, and accept the findings and sanction(s) as described above. I understand that selecting this option will render this matter fully resolved

☐ Option 2: I accept this disciplinary decision, waive my rights to a hearing, and want to dispute only the sanction(s). I understand that I must submit a written appeal to an Appellate Officer through the online appeal form (https://forms.office.com/r/4NBJpamdtT) within five (5) days of signing this form

☑ **Option 3: I do not accept this disciplinary decision and will appeal the finding(s) and sanction(s). NOTE FOR OPTION 3: For hearing-eligible cases, the matter will be appealed through a university hearing. For hearing-ineligible cases, the matter will be appealed in writing to the Appellate Officer. You will receive further instructions in a separate communication from our office.**



Involved Party Signature
Signed electronically on Friday December 19, 2025 at 3:15pm CST from IP address 128.62.46.117.



Administrator Signature
Signed electronically on Friday December 19, 2025 at 3:15pm CST from IP address 128.62.46.117.

CRF finalized by Natalie Campbell on December 19, 2025 at 3:15:42 pm CST

EA_ 99

 **Outlook**

---

## Re: Student Ombuds Referral

---

**From** ADA Coordinator <ADA@austin.utexas.edu>
**Date** Thu 10/30/2025 3:25 PM
**To** Jennifer Ferrell Brantley ██████████████████████████

Hi, Jennifer,

Thank you for your email. I am sorry to hear you are having so much difficulty. Being a facilitator between you and SCAI or another UT office is beyond the scope of my role and not something I can do. If you suspect that the meaning of "personal," "academic," or "business" these units are using is beyond the scope of the standard dictionary definitions of these words, then you will need to get that information from them directly. If you are having trouble understanding what they provide, you could give them examples of your own understanding of the definitions/use of the words and ask for clarification/accuracy.

Best,

Jennifer

---

**Jennifer W. Maedgen, Ph.D.**, Associate Vice President and University ADA/Section 504/PWFA/EIR Coordinator
**The University of Texas at Austin** | University Risk and Compliance Services | Institutional Accessibility and Accommodation
512-232-2910 | https://compliance.utexas.edu/disability-resources

---

**From:** Jennifer Brantley ██████████████████████
**Date:** Wednesday, October 29, 2025 at 5:39 PM
**To:** ADA Coordinator <ada@austin.utexas.edu>
**Subject:** Student Ombuds Referral

Hello, Ms. Maedgen

I spoke with Ms. Wilbon in the Student Ombuds office, and she recommended I try reaching out to you. I haven't had much luck on the student side of things, and her solution was to step outside the VPSA to talk to you.

I'm having a lot of trouble getting my communication disability accommodated. I've asked for clarification from VPLA, SCAI, and the Dean of Students, but no one answers. I had this problem with Dr. Wolford, and he also would never clarify. I'm a bottom-up processor, and I need a lot of context to understand and process information. Without it, I am unable to function and access information.

I believe it's called context sensitivity. Anyway, The Ombudsman is trying to help me get out of the SCAI spiral I'm currently stuck in because they will not define or clarify what their definition (with examples) is of business or academic. Also, Dr. Wolford said "personal" or "academic," and I don't know what that means.

EA 100

My academic and personal interests comingle. My special interest is WWII, and I volunteer at the Holocaust Museum in Dallas. So, to me, talking about my volunteering at the Holocaust Museum is academic... but Dr. Wolford didn't think so. None of my other professors have ever had a problem with me talking about different topics. I talk to my professors about a lot of different things that aren't exactly their purview.

But if someone isn't explaining to me how they understand or define the words—what they mean to them—then I don't know what they mean, and I'm left guessing. It's been getting me into a lot of trouble because other people refuse to explain.

I get overwhelmed because I don't know what they mean, and it keeps my nervous system lit up. I've lost over 40 lbs. since March, and now I've hit neurodivergent burnout and skill regression. I'm having a really difficult time, and I can't seem to get anyone to understand how I need to receive information to work with it and use it.

I just don't know what to do if I can't get other people to help me. My other professors (except Wolford) have always answered questions and helped me succeed. I don't know what to do when I have whole offices and departments refusing to accommodate my communication impairments and even mischaracterizing and mislabeling them.

Is there any way you'd be able to ask what they mean? That's why Ms. Wilbon wanted me to try and reach out. She thought that maybe you'd understand what I'm talking about and could help me. Expressive communication is a bit of a barrier for me, and I am unable to contact most everyone because I have a lawsuit against UT. So, I cannot contact really anyone within the VPSA. I have one dedicated SOS contact; that's really about it.

I don't know what information you need, or if I need to schedule anything with you, but please let me know.

Have a good evening.
Best,



**Jennifer Ferrell Brantley**
CMA (AAMA), NASM-CPT, CES, CNC, MNTS, LMT, LE, BLS, CBS

Government Major
History & Holocaust and Genocide Studies Minors
Social Inequality, Health, and Policy (Public Health Pathway) BDP
Gilman Scholar Alumni, U.S. Dept. of State
College of Liberal Arts, The University of Texas at Austin



Member of the American Association of Medical Assistants I Texas Society of Medical Assistants I The National WWII Museum I Dallas Holocaust and Human Rights Museum I LBJ Presidential Library and Museum I Texas Exes I Longhorn Foundation I Texas Public Health I New Wave Longhorns I Phi Beta Kappa I Phi Kappa Phi I Pi Sigma Alpha I Tau Sigma I Phi Sigma Pi I Omicron Delta Kappa I Phi Theta Kappa I Psi Beta I Sigma Kappa Delta I Mu Alpha Theta I Sigma Alpha Lambda I The National Society of Collegiate Scholars I The National Society of Leadership and Success I Dallas College Alumni Network I Dallas College Honors Scholar I Dallas College Honors Student Organization

EA   101